# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FABRICE SADHVANI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | |
| ) | |
| MICHAEL CHERTOFF, Secretary, ) | |
| U.S. Department of Homeland Security, ) | |
| ) | |
| EDUARDO AGUIRRE, Director, ) | |
| U.S. Citizenship and Immigration ) | |
| Service, ) | |
| ) | |
| JULIE MYERS, Asst. Secretary, ) | |
| U.S. Immigration and Customs ) | |
| Enforcement, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to Fed.R.Civ.P. 65, Plaintiff Fabrice Sadhvani respectfully moves for entry of a preliminary injunction to enjoin the Defendants from keeping the Plaintiff outside of the United States after having unlawfully removed him while proceedings were still pending in his claim for political asylum. The Plaintiff seeks an order requiring the Defendants to bring him back to the United States within 15 days so that he can prepare for and attend a hearing on his asylum claim in front of the Immigration Court in Baltimore, Maryland on September 11, 2006.

1

The grounds for this motion are set forth in the accompanying memorandum of points and authorities. Plaintiff asks that this Honorable Court, pursuant to Local Rule 65.1(d), schedule a hearing on this application for a preliminary injunction at the Court's earliest convenience.

Dated: August 17, 2006

Respectfully submitted,

Paul Shearman Allen, J.D.
DC Bar No. 167940
Paul Shearman Allen & Associates
1329 18th St. NW
Washington, DC 20036
Ph. 202-638-2777
Fax. 202-638-1677

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FABRICE SADHVANI,<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL CHERTOFF, Secretary,<br>U.S. Department of Homeland Security,<br><br>EDUARDO AGUIRRE, Director,<br>U.S. Citizenship and Immigration<br>Service,<br><br>JULIE MYERS, Asst. Secretary,<br>U.S. Immigration and Customs<br>Enforcement,<br><br>        Defendants. | CIVIL ACTION NO. |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff Fabrice Sadhvani respectfully submits this memorandum of points and authorities in support of his motion for a preliminary injunction.

### PRELIMINARY STATEMENT

1. The Petitioner, Fabrice Sadhvani, is a citizen of Togo. He has sought political asylum in the United States based on persecution he experienced at the hands of the Togo government. In order to establish a right for asylum, an alien must show that he or she *either* suffered past persecution or has a well-founded fear of future persecution.

1

Petitioner has been subjected to beatings and false imprisonment; Petitioner's grandmother has been beaten and her house ransacked because of his involvement with a democratic political movement; Petitioner's mother and grandmother were constantly abused when the authorities came around searching for Mr. Sadhvani; and up until the time that the Petitioner was able to escape from Togo, he was in constant hiding, in and out of the country, and never sleeping in the same place twice.

2. Mr. Sadhvani has been erroneously removed from the United States before a hearing could be held on his asylum application in front of Immigration Judge Lisa Dornell in Baltimore, MD. The Immigration Court originally denied Mr. Sadhvani's application for political asylum; however, based on new evidence and changed circumstances, the Board of Immigration Appeals has found the Petitioner's asylum claim to be meritorious and has granted reopening of the case so that a hearing may be held on the asylum application before an Immigration Judge.

3. Prior to the Board of Immigration Appeals issuing it's order to reopen Mr. Sadhvani's removal proceedings, the Respondents deported the Petitioner to Togo, *the country from which he fled to save his life*. <u>The Respondents did so without so much as notifying the Department of Justice or the BIA, and in violation of the Geneva Convention.</u>[1]

4. Undersigned counsel has made several efforts to secure Mr. Sadhvani's *safe* return to the U.S. so that he can attend his Immigration Court proceedings on September 11, 2006. These efforts have included filing an application with the United States Citizenship and Immigration Services (USCIS) for humanitarian parole; contacting the U.S. Immigration

---

[1] Article 45 of the Fourth Geneva Convention protects the rights of asylum seekers against non-refoulement. The core obligation of signatories to the Convention is this practice of non-refoulement, or not sending someone back into a situation of possible persecution: "In no circumstances shall a protected person be transferred to a country where he or she may have reason to fear persecution for his or her political opinions or religious beliefs." *Article 45, Fourth Geneva Convention, Adopted in 1949*.

2

and Customs Enforcement (ICE) officer who removed Mr. Sadhvani, Officer McCabe; and contacting the district counsel's office for DHS and asking for Mr. Sadhvani's return.

5. To prevent irreparable injury to the Plaintiff, and in the interests of justice and due process, it is respectfully requested that this Honorable Court grant the preliminary injunction and order the Defendants to bring Mr. Sadhvani back to the United States so that he can prepare for and attend his asylum hearing in Immigration Court on September 11, 2006.

6. Plaintiff has simultaneously filed a Petition for Writ of Habeas Corpus in this matter.

## STATEMENT OF FACTS

7. Petitioner Fabrice Sadhvani was born in Lome, Togo on May 30, 1972.

8. While in high school, Petitioner took part in underground opposition activities with other students. Petitioner's group was associated with the Student Movement in Struggle for Democracy (MELD). Petitioner was considered to be a member of MELD by the Togolese authorities, even though he did not officially join the organization until the Summer of 1991. (Declaration of Fabrice Sadhvani in Support of the Application for Asylum, October 30, 1997, Attachment 1 at p. 1).

9. While participating in a pro-democracy rally in Lome on March 12, 1991, Mr. Sadhvani and fellow members of opposition groups were shot at and beaten by members of HACAME (the youth wing of Dictator Eyadema's RPT party[2]). When members of the military arrived at the rally, they joined the HACAME and started beating demonstrators

---

[2] Gnassingbe Eyadema ruled Togo for 37 years until 2005 when he died, and his son, Faure Gnassingbe, was proclaimed his successor. For 25 of those years, he ruled under a one-party system. The Dictator was known for his ruthlessness, the torturing and killing of opponents, and even feeding those opponents to crocodiles. Le Rassemblement du Peuple Togolais (RPT) is the political party of the late-Eyadema and his son.

with rifle butts. Petitioner was attacked by several of these soldiers who hit him repeatedly in the head with their rifles.(Declaration at 2)

10. Petitioner was arrested at the demonstration by members of the RPT party along with about 150 of his fellow opposition group members. Petitioner was put in a truck and taken to headquarters of the gendarmerie, where he was put in a very small cell with approximately 11 other people. According to the Petitioner, the soldiers that brought him to the facility were saying that he and the other demonstrators were bring arrested for their opposition to the President. (Declaration at 2)

11. While in custody, Petitioner and the other detainees were subjected to inhumane and humiliating practices, including being forced to hold up heavy stones to avoid beatings, and singing RPT songs for the soldiers. Upon being forced out of his cell to go and sing for the soldiers on the second day of captivity, Petitioner realized that one of the detainees in his cell had died and that the man's body was rotting. According to the Petitioner, two of the prisoners died during his 3 days of captivity, and *neither body was removed from the cell*. (Declaration at 3).

12. On the third day of captivity at the hands of the RPT, Petitioner was released. The names of Mr. Sadhvani and his fellow prisoners were placed on a list, and the prisoners were told by their captors that they were not to talk to the media about what had occurred. The authorities told the Petitioner and his fellow prisoners that if any of them spoke with the media, that the RPT would know where to come and find them. After Petitioner's release, he received treatment for an entire week to rehabilitate from injuries sustained and malnutrition. (Declaration at 4).

13. After his release, Petitioner learned that many other people who were arrested at the pro-democracy demonstration had been taken to a military camp. At the camp, at least 50 of the prisoners were killed when RPT soldiers poured acid on them. Mr. Sadhvani was greatly affected both by his own captivity and by the news of the murders of his fellow demonstrators. According to Petitioner, the events hardened his resolve to fight against the Togolese government. (Declaration at 4).

14. For the next several months, Petitioner lived in hiding. Aware that the authorities now had his address and information about his family, Mr. Sadhvani stayed with various relatives and friends so as not to make his immediate family a target for the RPT. (Declaration at 4).

15. In the summer of 1991, Petitioner formally joined the MELD movement and he became more active in political activities. As a member of the organization, he was responsible for recruiting new members and distributing leaflets. MELD was operating as an underground opposition movement. Petitioner was also recruited to become a part of the security corps that accompanied opposition leaders to meetings in order to insure their security. At meetings and conferences, Petitioner and the security corps would check attendees for guns and other weapons. (Declaration at 5).

16. In July of 1992, Tavio Amorin, an opposition leader with the Pan African Social Party was gunned down on the street in Togo. The Petitioner was particularly affected by this murder because Amorin was his family member, a close friend, and mentor. (Declaration at 5).

17. As outrage over Amorin's assassination spread through Togo, a demonstration was scheduled for August 4, 1992 by various opposition groups. Petitioner was working as

part of the security corps for the demonstration. While working at the demonstration, chaos broke out as a large group of military police surrounded the crowd and started firing into it and beating demonstrators with sticks. Petitioner was knocked to the ground by two soldiers who proceeded to kick and whip him with their belts. Approximately 200 demonstrators were killed on that day. (Declaration at 6).

18. In August of 1992, fearing for his safety, Petitioner fled across the border into Benin. He received refugee status in Benin in 1994. (Attachment 2 - Transcript from Removal Proceedings in front of Judge Dornell, Immigration Court, Baltimore, MD, September 1, 1998, p. 31).

19. While living in Benin, Petitioner became involved in organizing an underground network to smuggle banned newspapers into Togo. At the time, all independent newspapers in Togo had either been bombed or forced out of circulation. At first, Mr. Sadhvani would actually cross the border into Togo to deliver the newspapers to a contact, usually Bassirou Ayeva. However, after the disappearance of Afiavi Gnininvi, Petitioner's colleague who began the newspaper smuggling network, Mr. Sadhvani traveled less frequently in and out of Togo, and instead of delivery, he would usually leave the newspapers at a secret location to be picked up. (Declaration at 6).

20. On April 16, 1996, Petitioner was headed to Aneho, Togo in order to deliver some newspapers. He was heading to meet a contact of his, a man by the name of Holonou. Mr. Sadhvani had never met Holonou prior to that date, but he knew what Holonou would be wearing. While traveling to Aneho, the public minibus that Petitioner was riding was stopped by soldiers. The soldiers boarded the bus and did a search. Petitioner had the banned newspapers in a gym bag, with clothes on top of them. His bag was not searched.

6

However, Petitioner overheard one of the soldiers tell the minibus driver that the bus had been stopped because some people were planning to meet in Aneho. Fearing for his life, the Petitioner decided not to get off of the minibus at Aneho, and instead he traveled on to his hometown of Lome. (Transcript at 43).

21. When he arrived in Lome, Petitioner decided to spend the night at his grandmother's house. His mother and siblings were also at the house. At approximately 1 AM that night, soldiers came to the house and began interrogating Petitioner's mother. The Petitioner fled out of the back of the house and stayed overnight with a friend. He asked the friend to walk by his grandmother's house to see what was going on. The friend reported to the Petitioner that his grandmother's house was surrounded by soldiers. (Declaration at 7).

22. The next day, Petitioner fled to Benin. His mother came to join him there, and she eventually told him what had occurred on the night he fled his grandmother's house. The soldiers had found the banned newspapers and they yelled and threatened Mr. Sadhvani's mother and grandmother. The soldiers proceeded to ransack the house before leaving. (Declaration at 8).

23. Following his escape to Benin, Petitioner was afraid that the Togolese authorities would come after him. Many Togolese who were living in exile had mysteriously disappeared or been killed under suspicious circumstances. His mother, who was a former employee with Sabena Airlines, used her contacts to arrange a flight out of the country and protection for Mr. Sadhvani until he boarded the plane. An uncle came and picked the Petitioner up in Benin, and with great trepidation, Mr. Sadhvani traveled to the U.S. Embassy in Lome to obtain a visa. (Transcript at 48).

24. On his way to the U.S., Petitioner stopped in France for five days to pick up money from an uncle who lived there. While in France, Petitioner learned that Jean Degli, President of the Togolese human rights league, had only recently escaped being killed by a bomb planted in his home in France. As a result, Petitioner realized that he would have to seek safety in the U.S. (Declaration at 9).

25. Petitioner arrived in New York on May 26, 1996. (Transcript at 1). He began studying at The Sanz School in Washington, DC.

26. In early 1997, Petitioner received letters from his mother and his uncle in France (Attachments 3) that described events occurring after he had left Togo. Military men had gone to the houses of his mother and grandmother searching for Mr. Sadhvani. In both instances, when the soldiers didn't find the Petitioner, they proceeded to assault and beat his mother and grandmother. Subsequently, Petitioner's mother fled to Ghana, and his grandmother fled to France. As a result of this new information about the extreme dangers for him and his family in Togo, Petitioner filed an application for political asylum (Attachment 4) on or about March 18, 1997. (Transcript at 49).

27. On or about April 8, 1997, the Petitioner received a notice from INS to appear for an interview on his application for asylum. The interview was scheduled for April 29, 1997. (Attachment 5).

28. On or about June 18, 1997 the Petitioner received a Referral Notice from the Department of Justice, which stated that the DOJ had not granted asylum and that the matter was being referred to an Immigration Judge. (Attachment 6).

29. On or about July 2, 1997, Petitioner received a notice to appear in removal proceedings. The notice alleged that Mr. Sadhvani had been admitted into the United States as a

8

nonimmigrant student with authorization to remain in the country until March 30, 1997, and that he remained in the U.S. beyond that date without authorization from INS. (Attachment 7).

30. The Petitioner appeared in removal proceedings in front of Judge Lisa Dornell on September 1, 1998. Judge Dornell heard extensive testimony from Mr. Sadhvani about the nature of his asylum claim, and in her oral decision she states:

> "The Court has considered the information on country conditions that are in the record and the Court is not making a finding that country conditions are favorable in Togo, only that there is a lack of corroboration and a lack of credible evidence that would demonstrate that the respondent would have difficulties given the circumstances in Togo. And for those reasons, the applications for asylum and withholding of deportation, withholding of removal are denied." (Oral Decision of the Immigration Judge, September 1, 1998, p.8).

Petitioner was granted voluntary departure by the Immigration Court.

31. On or about September 25, 1998, Petitioner, through counsel, appealed his matter to the Board of Immigration Appeals. (Attachment 8). The Board dismissed the appeal on December 16, 2002 (Attachment 9).

32. On February 22, 1999, Petitioner married Mariam Mohamad Alawi in Arlington, Virginia. Petitioner's wife is an asylee from Tanzania. The two had met in July of 1996, while both were students at The Sanz School. On or about June 4, 1999, Petitioner's wife filed a Refugee/Asylee Relative Petition on behalf of Mr. Sadhvani. (Attachment 10). Petitioner and his wife were interviewed with respect to the Relative Petition in March of 2001. The officer who interviewed them made a request for additional evidence, and on June 9, 2001, Mr. Sadhvani and his wife, through former counsel for the Petitioner, Patrick Tzeuton, submitted the requested evidence, including tax returns and a lease to show that the two were living together. (Attachment 11). <u>Since 2001, three attorney</u>

9

<u>inquiries have been made to USCIS regarding the status of the Asylee Relative Petition. The third inquiry was made by Attorney Gina Takemori on January 8, 2005. (Attachment 12).</u>

33. On December 27, 2002, Attorney Tzeuton filed a Motion to Reopen removal proceedings based on Mr. Sadhvani's eligibility for derivative asylum benefits based on his wife's approved asylum application and pending Refugee/Asylee Relative Petition. However, Mr. Tzeuton's ineffective assistance resulted in his failure to include with the Motion to Reopen two crucial documents: Petitioner's marriage certificate and the order by the Immigration Court granting asylum to his wife, and, as a result, the BIA denied the motion on or about February 14, 2003. (Attachment 13; Affidavit of Fabrice Sadhvani, March 22, 2005, p. 2). Petitioner subsequently filed a complaint with the New York state bar Committee on Professional Standards, where he claimed ineffective assistance of counsel with respect to Attorney Tzeuton. (Attachment 14).

34. On or about March 12, 2003, Mr. Tzeuton filed a Motion to Reconsider the BIA's denial of the Motion to Reopen. This time, Mr. Tzeuton attached the relevant documents: proof of wife's asylee status and the marriage certificate. The motion was denied on or about July 8, 2003 because it didn't meet the guidelines for a motion to reconsider. (Attachment 15). The Petitioner was not informed by Mr. Tzeuton that the Motion to Reconsider had been denied. It was 18 months later, while sorting through his paperwork with new counsel, Gina Takemori, that Petitioner became aware of the denial.

35. On or about February 17, 2005, the Petitioner received a notice to appear for removal. (Attachment 16).

10

36. In March of 2005, Petitioner, through Attorney Jay Marks, filed another Motion to Reopen with the BIA. (Attachment 16). Along with the Motion, Petitioner submitted three letters from asylees living in the U.S. regarding current country conditions in Togo, as well as a 2005 Amnesty International Report on Togo.

37. On or about May 2, 2005, Attorney Marks filed an Application for Stay of Removal with the U.S. Immigration and Customs Enforcement office in Baltimore, MD. On May 18, 2005, Field Officer Director, Calvin McCormick, sent a letter to the Petitioner, stating that <u>the Application for Stay of Removal was **GRANTED** because of the pending Refugee/Asylee Relative Petition on behalf of Mr. Sadhvani. (Attachment 17). THERE IS NO RECORD THAT THE STAY WAS EVER TERMINATED PRIOR TO PETITIONER'S REMOVAL.</u>

38. Petitioner also filed a motion for stay of removal with the BIA while the Motion to Reopen was pending. This motion for a stay was denied by the Board on or about December 22, 2005. (Attachment 18).

39. Based on information that USCIS had obtained in speaking with Petitioner's wife, ICE learned that the couple had separated, and acting on that information, the Respondents detained Mr. Sadhvani on October 12, 2005. (Attachment 19, Letter of Attorney Marks, p.1). The U.S. Immigration and Customs Enforcement had no right to detain the Petitioner because a stay of removal had been granted by the Baltimore Field Office pending adjudication of the Asylee Relative Petition. <u>THIS STAY WAS NEVER TERMINATED</u>. Furthermore, the fact that Petitioner and his wife were having difficulties and were separated does not negate the validity of the pending Asylee Relative Petition or the underlying marriage. ICE, in effect, made an independent

11

adjudication on the Asylee Relative Petition when it detained the Petitioner. This act was outside the scope of ICE's power and jurisdiction: only USCIS could have denied the Asylee Relative Petition.[3]

40. On December 28, 2005, Respondents removed the Petitioner from the United States and sent him back to Togo. Respondents did so without advising the Department of Justice or the Board of Immigration Appeals, even though the Board was still considering the case. This unilateral decision to remove the Petitioner violated his due process rights because his matter was still pending and he was prima facie eligible for both the relief of asylum and for derivative benefits from his wife's petition and status.

41. <u>On March 21, 2006, the Board of Immigration Appeals **GRANTED** the Motion to Reopen Petitioner's removal proceedings. The BIA states in the per curiam order that the motion meets the standards for reopening based on new evidence of changed circumstances. (Attachment 20). The BIA has now remanded this matter to the Immigration Court for a hearing on the merits of Petitioner's asylum application.</u>

42. Petitioner is currently in hiding in and around Togo. He has been moving stealthily in and out of the country so as to avoid detection by authorities. Mr. Sadhvani fears for his life.

43. Undersigned counsel has made several efforts to secure Mr. Sadhvani's *safe* return to the U.S. so that he can attend his Immigration Court proceedings on September 11, 2006. These efforts have included filing an application with the United States Citizenship and Immigration Services (USCIS) for humanitarian parole; contacting the U.S. Immigration and Customs Enforcement (ICE) officer who removed Mr. Sadhvani, Officer McCabe; and contacting the district counsel's office for DHS and asking for Mr. Sadhvani's return.

---

[3] In the context of removal proceedings, the Immigration Judge would also have the power to grant a Refugee/Asylee Relative Petition. However, the Petitioner was not in removal proceedings, and so the only body authorized to grant or deny the petition was USCIS. ICE was without jurisdiction to act on the petition.

12

## **ARGUMENT**

The Defendants' actions in removing the Plaintiff from the United States while his asylum case was still pending were unlawful and violative of Mr. Sadhvani's due process rights. Defendants' actions have subjected the Plaintiff to further persecution at the hands of the authorities from whom he fled and sought shelter in the U.S. Unless the Defendants are enjoined and ordered to bring Mr. Sadhvani back to the United States so that he can attend his asylum hearing on September 11, 2006, the Plaintiff will suffer irreparable harm in the following ways: 1) the loss of his legitimate claim to political asylum; 2) a 10-year bar from reentering the U.S.; and 3) continued persecution at the hands of the Togolese government.

I.    The Court has Jurisdiction to Grant the Requested Relief

Pursuant to 28 U.S.C. § 1331, "the district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States," and the Administrative Procedure Act, 5 U.S.C. § 702, which authorized this court to review agency action.

Plaintiff has exhausted all administrative remedies.

II.    The Plaintiff is Entitled to Entry of a Preliminary Injunction

In considering Plaintiff's request for the entry of a preliminary injunction compelling the Defendants to bring Mr. Sadhvani back to the United States, the Court must assess "[t]he familiar factors affecting the grant of preliminary injunctive relief – 1) likelihood of success on the merits, 2) irreparable injury to the plaintiff, 3) burden on ... others' interests, and 4) the public interest." Jacksonville Port Auth. V. Adams, 556 F.2d 52, 57 (D.C. Cir. 1977) (citing Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C. Cir. 1958), and A Quaker

Action Group v. Hickel, 421 F.2d 1111, 1116 (D.C. Cir. 1969)). The consideration of these factors in the instant case firmly establishes the Plaintiff's entitlement to injunctive relief.

A. Likelihood of Success on the Merits

Given the Plaintiff's legitimate claim for political asylum, and given the fact that the Defendants removed Mr. Sadhvani without consideration for his due process rights or the Board of Immigration Appeals' procedures, the likelihood of success on the merits is high.

The Defendants removed the Plaintiff without notice to the BIA and ostensibly without terminating the stay of removal granted to Mr. Sadhvani by the Baltimore Field Office for ICE. The Plaintiff is clearly entitled to appear in front of the Immigration Court on his asylum claim. Therefore, the Defendants must be ordered to bring him back to the Unites States.

B. Irreparable Injury to the Plaintiff

Unless the Defendants are ordered to bring the Plaintiff back to the United States immediately, Mr. Sadhvani will suffer irreparable harm. First, his asylum claim will be lost, which means that he will be forced to stay in Togo, the country from which he fled to save his life. Second, Plaintiff will be barred from reentering the U.S. for a period of 10 years. And, finally, Mr. Sadhvani will continue to face persecution and he will continue to fear for his safety as long as he remains in Togo.

C. There is No Burden on the Interests of Others if Plaintiff is Brought Back to Attend his Asylum Hearing

The immediate relief sought by Plaintiff will require nothing more of the Defendants than what the Constitution already mandated – that they act in accordance with due process and allow the Plaintiff to pursue his asylum claim in Immigration Court. The Defendants are being asked to

rectify their own unlawful behavior, and that cannot be characterized as a burden on any party's interests.

D. The Public Interest Favors the Requested Relief

The final criterion for the issuance of a preliminary injunction is clearly satisfied in this case. As a signatory to the Fourth Geneva Convention, the United States vowed to uphold the principle of non-refoulement. Removing the Plaintiff from the U.S. and sending him to Togo was an act in violation of Geneva because the Defendants have now subjected Mr. Sadhvani to the same persecution and fear from which he sought shelter in the U.S. The American public would be outraged at such senseless and irresponsible actions taken on behalf of the U.S. Government by the Defendants.

III. The Court Should Order the Defendants to Bring Plaintiff Back to the U.S. Immediately

For every day that goes by, the Defendants are keeping Mr. Sadhvani in grave danger. He is fear for his life and doing everything within his power to avoid the Togolese authorities. He is constantly moving from place to place in order to avoid detection.

Mr. Sadhvani deserves to have his day in court on his political asylum claim. The BIA has found his claim to be meritorious, and therefore, Defendants' actions served only to disturb and disrupt the processes of the Department of Justice, of which the BIA is part.

Recognizing the extraordinary public interest in a Fourth Geneva Convention matter such as the instant case, this Honorable court should order the Defendants to bring Mr. Sadhvani back to the U.S. within 15 days so that he can adequately prepare for and attend his hearing in front of Judge Dornell.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction should be granted. Plaintiff asks that the Court, pursuant to Local Rule 65.1(d), schedule a hearing on this motion at the Court's earliest convenience.

> Respectfully submitted,
>
> _____
> Paul Shearman Allen, J.D.
> DC Bar No. 167940
> Paul Shearman Allen & Associates
> 1329 18th St. NW
> Washington, DC 20036
> Ph. 202-638-2777
> Fax. 202-638-1677

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August, 2006, a copy of Plaintiff's Motion for a Preliminary Injunction along with Memorandum of Points and Authorities was sent via certified mail to:

Kenneth L. Wainstein
United States Attorney
555 4th Street, NW
Washington, DC 20530

Alberto Gonzales
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Office of the Chief Counsel
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
Fallon Federal Building
31 Hopkins Plaza
Baltimore, MD 21201

Paul Shearman Allen, J.D.
DC Bar No. 167940
Paul Shearman Allen & Associates
1329 18th St. NW
Washington, DC 20036
Ph. 202-638-2777
Fax. 202-638-1677