# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

FABRICE SADHVANI,            )

                       )

       Petitioner,        )

                       )   C.A. No.06-1454 (JDB)

       v.                 )

                       )

MICHAEL CHERTOFF, et al.,     )

                       )

      Respondents.      )

                       )

## RESPONDENTS' OPPOSITION TO
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Respondents, through their undersigned counsel, file this memorandum in opposition to Fabrice Sadhvani's motion for a preliminary injunction. Sashvani seeks the extraordinary relief of an order requiring the Department of Homeland Security (DHS) to bring him back into the United States from Togo to attend a reopened hearing before an immigration judge in Baltimore, Maryland.[1] However, Sadhvani was lawfully removed to his native Togo pursuant to an outstanding final order of removal issued after a full hearing and appeal to the Board of Immigration Appeals (BIA or Board). At the time of his removal, no operative stay was in effect. His return to Togo was in accordance with law and brought the proceedings to finality. It also had the effect of divesting the BIA of

---

[1] By filing this opposition to petitioner's motion for a preliminary injunction, respondents do not concede proper service or waive service pursuant to Fed. R. Civ. P. 4, to the extent it has not yet been fully accomplished.

jurisdiction to act on the motion to reopen.[2]  The fact that the BIA subsequently

granted Sadhvani's motion, apparently unaware of his departure does not vest in

Sadhvani a right to reenter the Unied States.

Thus, based on the facts of this case, Sadhvani can not demonstrate a

substantial likelihood of prevailing on the merits for a number of reasons:  First,

the REAL ID Act amended the Immigration and Nationality Act (INA) to make

clear that district courts are without jurisdiction over Sadhvani's claims in this

case, whether brought as a habeas petition, under the mandamus statute, or on

any other basis.   Second, the Court lacks subject matter jurisdiction on the

alternative ground that aliens living outside the United States are not in DHS's

actual or constructive custody – a jurisdictional prerequisite for habeas review.

Third, even assuming jurisdiction, and despite petitioner's contentions to

the contrary,  there is no basis upon which this Court can order respondents to

grant Sadhvani reentry into the United States for the purpose of reopened

removal proceedings.  Petitioner offers no citations to cases or law to the

contrary.  He was removed under a valid, final order and, by operation of the

BIA's regulations that acted as an automatic withdrawal of his pending motion

---

[2]

  After becoming aware of the BIA's order, DHS filed a motion asking the BIA to reconsider
and vacate its order.  See Matter of Crammond, 23 I&N Dec. 179 (BIA 2001) (When the
Board is presented with evidence that it has granted a motion to reopen after the alien's
departure from the United States, it is appropriate to reconsider and vacate the prior order on
jurisdictional grounds).  DHS has also filed a motion asking the Immigration Judge (IJ) to
continue the master calendar hearing set for September 11, 2006, as to Sadhvani.  Copies of
these motions are attached hereto as DHS Exh. 3 &4.

to reopen.  Fourth, any claim for mandamus is either moot or fails to state a claim.

Finally, in the face of the overwhelming evidence that petitioner can not demonstrate a substantial likelihood of prevailing, the Court need not tarry long in weighing the other factors that must be shown to support preliminary injunctive relief.  Nevertheless, as discussed below, these factors also counsel denial of Sadhvani's motion.

## FACTUAL BACKGROUND

The pertinent facts are not in dispute and are substantially contained in the exhibits to petitioner's motion for a preliminary injunction.  Fabrice Sadhvani is a native and citizen of Togo who entered the United States on May 26, 1996 as a nonimmigrant student authorized to remain for a period not to exceed March 30, 1997 but who stayed beyond that date without authorization.  Petitioner's (Pl.) Exh. 7; see Pl. Exh. 2, pg. 2 (petitioner's admission of factual allegations and concession of charge of removability).  On September 1, 1998, Sadhvani appeared before an IJ and testified in support of his applications for asylum and withholding of removal.  Pl. Exh. 2.  At the conclusion of the hearing, the IJ found Sadhvani removable as charged and denied his applications for relief.  Id. at 73.  He appealed the decision to the BIA on September 25, 1998.  Pl. Exh. 8.

While his appeal was pending, on February 22, 1999, Sadhvani married Miriam Mohamad Alawi, a national of Tanzania whose application for asylum in the United States was granted two days later, on February 24, 1999. Respondents' (DHS) Exh. 1, attached hereto. On June 15, 1999, Alawi filed a form I-730 Refugee/Asylee Relative Petition on behalf of Sadhvani which, if granted, would accord him derivative asylee status as Alawi's husband. Id.; Pl. Exh. 10.

While the I-730 petition was pending, on December 16, 2002, the Board affirmed the IJ's decision and dismissed Sadhvani's appeal. Pl. Exh. 9. Sadhvani sought no further judicial review and the order of removal to Togo became final.[3] On December 27, 2002, Sadhvani filed a timely motion to reopen the removal proceedings based on his marriage and the pending Form I-730 petition, which the BIA denied on February 14, 2003. Pl. Exh. 13. On March 12, 2003, he filed a motion for reconsideration which the BIA also denied on July 8, 2003. Pl. Exh. 16. In 2004, Sadhvani and his wife, Alawi, separated. Pl. Exh. 19.

---

[3]   Pursuant to Section 242(a) of the Immigration and Nationality Act, 8 U.S.C. § 1252(a) & (b)(1), Sadhvani had 30 days within which to appeal the BIA decision to the Fourth Circuit Court of Appeals. Having declined to do so, the BIA's decision became the final, unreviewable order of removal. Thus, although Sadhvani includes his original asylum application and exhibits as attachments to his motion for preliminary injunction and his petition initiating this suit, and although he discusses the factual background of that asylum application, the denial of that relief is not subject to review in this, or any court.

In March 2005, petitioner filed another motion to reopen his removal proceedings, this time based on changed circumstances in Togo. See Pl. Exh. 18, 20. While this motion was pending, on May 2, 2005, petitioner applied to the Baltimore Field Office, Immigration and Customs Enforcement (ICE) in DHS for a stay of removal based on his marriage and the pending Form I-730 Relative Petition. Pl. Exh. 17. By letter dated May 18, 2005, the Field Office Director notified Sadhvani that based on the pending I-730 relative petition, a stay would be granted as a matter of discretion. Id. The letter further advised, however, that the discretionary stay was "contingent on [the] I-730 and Motion to Reopen being granted by the Board of Immigration Appeals." Id. Subsequently, on or around October 6, 2005, the U.S. Citizenship and Immigration Service (USCIS) became aware that Sadhvani and Alawi were separated and that Alawi intended to file for divorce. DHS Exh. 1; Pl. Exh. 19. Accordingly, by letter dated November 2, 2005, USCIS advised Alawi that the I-730 petition that she filed was denied. DHS Exh. 1.

On December 22, 2005, the BIA concluded, after consideration of all information, that there was little likelihood that petitioner's pending motion to reopen would be granted. Pl. Exh. 18. On that basis, the Board denied Sadhvani's application for a stay of removal. Id. Shortly thereafter, on December 28, 2005, petitioner was removed to Togo pursuant to the outstanding

order of removal.  The execution of the order of removal brought the

proceedings to finality and operated as a withdrawal of the outstanding motion

to reopen pursuant to regulation.  See 8 C.F.R. § 1003.2(d).

Apparently unaware that petitioner had been removed, however, the BIA

acted on the motion and in a brief order dated March 21, 2006, the Board

determined that the motion met the standards for reopening based on new

evidence of changed circumstances in Togo.  Pl. Exh. 20.  In doing so, the Board

made no findings with regard to the merits of asylum or withholding of removal.

Id.  The IJ in Baltimore, MD set the matter for inclusion in a master calendar

hearing for September 11, 2006, not an individual merits hearing on asylum.

See DHS Exh. 2.  DHS has filed a motion with the BIA to bring to its attention

the fact that Sadhvani was removed in December 2005 and a motion with the IJ

to continue the master calendar hearing as to Sadhvani until the BIA can

reconsider.  DHS Exh. 3 & 4.

## ARGUMENT

### I.  Standard for Preliminary Injunction

To prevail on a motion for preliminary injunction, Sadhvani must

demonstrate four well-established factors:  (1) a substantial likelihood of success

on the merits; (2) that he will suffer irreparable  injury absent the relief

requested; (3) that other interested parties will not be harmed if the requested

relief is granted; and (4) that granting the requested injunction would further the public interest.  Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004); Al-Fayed v. Central Intelligence Agency, 254 F.3d 300, 303 (D.C. Cir. 2001); Washington Area Metro. Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977); Al-Anazi v. Bush, 370 F.Supp.2d 188, 193 (D.D.C. 2005).  Because a preliminary injunction is "an extraordinary and drastic remedy", a court should grant  the relief unless the movant, by a clear showing, carries his burden of persuasion.  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997); accord Cobell, 391 F.3d at 258; Al-Anazi, 370 F.Supp.3d at 193.

This Court has also observed that, although consideration of a motion for a preliminary injunction involves a balancing of the four required factors, it is particularly important that the movant demonstrate a substantial likelihood of success on the merits.  Al-Anazi, 370 F.Supp.2d at 193, citing, inter alia, Davenport v. Int'l Bhd. Of Teamsters, AFL-CIO, 166 F.3d 356, 366-67 (D.C. Cir. 1999).  Where the movant cannot show a likelihood of success on the merits of the underlying suit, it will take a very strong showing with respect to the other factors to support a grant of preliminary relief.  Id.

In addition, the following types of preliminary injunctions are disfavored and they require that the movant satisfy an even heavier burden of showing that the four factors listed above weigh heavily and compellingly in movant's favor

before such an injunction may be issued: (1) a preliminary injunction that disturbs the status quo; (2) a preliminary injunction that is mandatory as opposed to prohibitory; and (3) a preliminary injunction that affords the movant substantially all the relief he may recover at the conclusion of a full trial on the merits.  SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098-99 (10th Cir. 1991).  Because the preliminary injunction Sadhvani seeks falls within all of the three types listed above, he is required to make an extraordinarily compelling showing before the Court should grant this motion.

## II.    Sadhvani Cannot Demonstrate Any Likelihood Of Success On The Merits

In the instant case, Sadhavani can not satisfy the first, and most significant, factor necessary to support a preliminary injunction.  He can not demonstrate a substantial likelihood of success on the merits, first because the Court lacks subject matter jurisdiction over his petition for several reasons, and second, because despite his protestations to the contrary, petitioner was returned to Togo pursuant to a lawful final order of removal.  The BIA's subsequent action does not change this or create a right to reenter the United States.  Lastly, any claim Sadhvani has predicated on a failure to adjudicate Alawi's I-730 petition is moot.  Accordingly, the Court should deny petitioner's extraordinary request for a mandatory preliminary injunction requiring that he be brought back into the United States.

A. The REAL ID Act Makes Clear That The District
Courts Lack Jurisdiction To Review Claims Related
To An Alien's Removal From The United States

Sadhvani can not show a likelihood of success on the merits of this case

because district courts lack jurisdiction to review claims like his.  Sadhvani's

claims fall within the reach of several jurisdictional provisions of the

Immigration and Nationality Act.  Pursuant to recent Congressional legislation,

these provisions specifically preclude habeas corpus or mandamus review by

expressly referencing these statutes at 28 U.S.C. §§ 2241 & 1361, respectively.[4]

See REAL ID Act at § 106(a).

On May 11, 2005, the President signed the REAL ID Act into law.

Section 106(a) of the REAL ID Act makes significant amendments to the INA's

jurisdictional statute at 8 U.S.C. § 1252, to clarify that district courts lack

jurisdiction, habeas or otherwise, to review any removal order or removal-

related claim for any alien, criminal or non-criminal.  As a result, § 1252, which

the Supreme Court in INS v. St. Cyr, 533 U.S. 289 (2001) found to preclude

---

[4]  Sadhvani's claims under the Administrative Procedures Act (APA), 5 U.S.C. § 701, et seq.,
also fail because, as quoted above, the amendments to the REAL ID Act preclude district
court review "notwithstanding any other provision of law (statutory or nonstatutory)".  To the
extent Sadhvani contends that APA review is appropriate because of unreasonable delay in
the respondents' adjudication of the I-730 relative petition filed by Alawi on his behalf,
Sadhvani fails to demonstrate a substantial likelihood of prevailing because, among other
reasons, that claim is moot.  As set forth above, by letter dated November 2, 2004, addressed
to Mariam Mohamad Alawi (the I-730  petitioner), USCIS denied the I-730 petition because
of Alawi's representations that the couple were separated and that she intended to divorce
Sadhvani.  See DHS Exh. 1.  See also discussion under section I C, below.

"judicial review" over criminal aliens' removal orders, but not to preclude "habeas review" in district court, now clearly precludes **all** review in district court, including habeas corpus review of criminal **and** non-criminal aliens' removal orders and removal-related claims such as those Sadhvani has presented in this case. Specifically, § 106(a)(3) of the REAL ID Act amended 8 U.S.C. § 1252(g), which now states as follows:

> (g) EXCLUSIVE JURISDICTION. Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), *including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title,* no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter. (emphasis added)

The reference in § 1252(g) to "[e]xcept as provided in this section" refers to Section 1252, which provides that judicial review of removal orders is available only in the court of appeals through a petition for review; not in district court. Further, by making express reference to the habeas corpus statute at 28 U.S.C. § 2241, and the mandamus statute at 28 U.S.C. § 1361, Congress made clear that there is no longer such jurisdiction over claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders."

Moreover, Congress made the amendment to § 1252(g) and all of the

other amendments in § 106(a) of the REAL ID Act effective immediately and

applicable to any "final administrative orders of removal, deportation,

exclusion" that was "issued before, on, or after the date of enactment of this

division." REAL ID Act § 106(b). Accordingly, the amendments in § 106(a)

apply to this case because Sadhvani seeks habeas and mandamus review of the

execution of a removal order which was "issued before . . . the date of

enactment" of the REAL ID Act.[5] Id.

In this case, Sadhvani challenges the respondents' execution of the

outstanding order for his removal to Togo, which he claims was unlawful. That

is the gravamen of his suit from which his various requests for relief flow. Thus,

this suit clearly falls withing the language of § 1252(g) precluding judicial

review in the district court of any cause or claim by any alien arising from the

action of respondents to execute removal orders.

Sadhvani's challenge to his removal is also precluded by 8 U.S.C.

§ 1252(b)(9), which now states as follows:

> Judicial review of all questions of law and fact,
> including interpretation and application of

---

[5] REAL ID § 106(c) provides for the transfer of habeas petitions to the courts of appeals if such petitions were pending on the date that the REAL ID Act was enacted and if they challenged the removal order under 28 U.S.C. §2241, further underscoring Congressional intent to consolidate in the courts of appeal any challenges to the commencement of proceedings, adjudication of cases and the execution of removal orders.

constitutional and statutory provisions, arising from
any action taken or proceedings brought to remove an
alien from the United States under this subchapter shall
be available only in the judicial review of a final order
under this section. *Except as otherwise provided in
this section, no court shall have jurisdiction, by habeas
corpus under section 2241 of title 28, United States
Code, or any habeas corpus provision, by section 1361
or 1651 of such title, or by any other provision of law
(statutory or nonstatutory), to review such an order or
such questions of law or fact.* (emphasis added)

By making express reference to the habeas corpus statute at 28 U.S.C.

§ 2241 and the mandamus statute at 28 U.S.C. § 1361, Congress made clear that

there is no longer such jurisdiction over claims relating to an alien's removal.

The Supreme Court has described 8 U.S.C. § 1252(b)(9) as the "unmistakable

'zipper' clause" that "says 'no judicial review in deportation cases unless this

section provides judicial review.'" See Reno v. AADC, 525 U.S. 471, 483

(1999). Sadhvani's claim falls squarely within the parameters of § 1252(b)(9)

because it plainly implicates his removal from the United States. Section

1252(b)(9) applies to preclude review in district court of all issues, whether fact

or law, constitutional or non-constitutional, "arising from any action taken or

proceedings brought *to remove an alien from the United States . . . .*" (Emphasis

added). Congress has now made clear that habeas review and mandamus do not

provide exceptions to this preclusion.

Accordingly, Sadhvani is unable to demonstrate a likelihood of prevailing on the merits given the Court's lack of jurisidiction to consider his suit.

### B.  Because Sadhvani Is Not In Respondents' Custody, The Court Does Not Have Habeas Jurisdiction.

Sadhvani is unable to demonstrate likelihood of success because this Court lacks habeas jurisdiction for an alternative reason. The habeas statute applicable here requires that the petitioner be "in custody". 28 U.S.C. § 2241(c). This requirement of custody is jurisdictional.  Having been removed to Togo, petitioner is no longer in the actual or constructive custody of respondents and thus, this Court is without subject matter jurisdiction to entertain his petition for habeas corpus review.  See Bruno v. Albright, 197 F.3d 1153, 1161 (D.C. Cir. 1999); El-Hadad v. United States,  377 F.Supp.2d 42, 46-49 (D.D.C. 2005) (discussing cases).

Indeed, the D.C. Circuit Court of Appeals has declined to extend habeas jurisdiction to aliens living freely abroad.  Id.  In Bruno, the Court of Appeals noted that "[t]he right to seek habeas relief arose as a consequence of the alien's being in custody; it did not rest on any right of entry." 197 F.3d at 1161.  The Court reasoned that extending habeas jurisdiction over aliens living freely abroad would give them greater remedies than to those aliens detained at ports of entry, a result that Congress could not have intended.  Id.  Other circuits have similarly held that an alien living freely abroad is not in custody under or by

authority of the United States and thus can not invoke the habeas jurisdiction of the courts to challenge an immigration decision.  See, e.g., Miranda v. Reno, 236 F.3d 1156 (9th Cir. 2001), cert. denied, 534 U.S. 1018 (2001) (alien removed to Mexico did not satisfy the "in custody" requirement of habeas corpus jurisdiction to challenge an executed order of removal); Samirah v. O'Connell, 335 F.3d 545, 549-50 (7th Cir.2003) (declining to hold that an individual denied entry to the United States but otherwise with no restraints on his liberty is in the custody of the United States).

In Miranda v. Reno, the Ninth Circuit Court of Appeals recognized a limited exception allowing the exercise of habeas jurisdiction over aliens who have been removed but only under "extreme circumstances" such as when the alien is removed in violation of the immigration judge's order and after interference with his right to counsel.  Miranda, 238 F.3d at 1159.  The Miranda exception, however, should not be followed in this case for several reasons.

First, Miranda predates the passage of the REAL ID Act so the viability of the exception is in serious doubt.  Moreover, it is unclear whether Miranda is compatible with the D.C. Circuit's holding in Bruno, where the Court of Appeals categorically denied the application of habeas jurisdiction to aliens living freely abroad.  Bruno, 197 F.3d at 1162; see also El-Hadad, 377 F.Supp.2d at 49. Third, even if this Court could adopt the Miranda exception, it is inapplicable to

the undisputed facts of this case.  In Miranda, the Ninth Circuit refused to

exercise habeas jurisdiction over an alien who was removed pursuant to an

immigration judge's valid order but who wished to obtain judicial review of his

claim that he was denied due process.  Id. at 1159.  The Court held that having

already been removed, Miranda was no longer "in custody" and thus could not

satisfy this jurisdictional requirement for habeas corpus review.  Id.

Similarly, in this case, Sadhvani was returned to Togo pursuant to a valid

final order of removal entered by an immigration judge and affirmed by the BIA.

There was no longer any stay in place, either by virtue of the pendency of

Alawi's I-730 or the BIA's consideration of Sadhvani's motion to reopen.  The

I-730 petition was denied on November 2, 2004.  The Board denied Sadhvani's

application for a stay of his removal pending decision on his motion to reopen

on December 22, 2005.  Petitioner was removed thereafter on December 28,

2005.  Accordingly, Sadhvani can not demonstrate that the Court has jurisdiction

under the habeas statute, even assuming that the REAL ID Act did not preclude

the district court's review.

C.  Sadhvani Can Not Demonstrate A Likelihood
Of Prevailing On His Mandamus Claim

Even assuming for purposes of this opposition that the Court has

jurisdiction under the APA and the mandamus statute, Sadhvani's claims fail.

Issuance of a writ of mandamus is an extraordinary remedy, to be used only

under exceptional circumstances and where essential to justice.  See Hanek v.
Secretary of HEW, 535 F.2d 1291, 1296 (D.C. Cir. 1976); In Re Tripati, 836
F.2d 1406, 1407 (D.C. Cir. 1988)(citing Starnes v. McGuire, 512 F.2d 918, 929
(D.C. Cir. 1974)(en banc)).  While a federal district court has authority to issue a
writ of mandamus pursuant to 28 U.S.C. § 1361, its issuance is not required;
rather, mandamus is issued at the discretion of the Court.  National Wildlife
Federation v. United States, 626 F.2d 917, 923 (D.C. Cir. 1980).

Mandamus generally will not issue unless there is a clear right to the relief
sought, a plainly defined and nondiscretionary duty on the part of the respondent
to honor that right, and no other adequate remedy, either judicial or
administrative, available.  Ganem v. Heckler, 746 F.2d 844, 852 (D.C. Cir.
1984); accord In Re Lane, 801 F.2d 1040, 1042 (8th Cir. 1986); Homewood
Professional Care Center, Ltd. v. Heckler, 764 F.2d 1242, 1251 (7th Cir. 1985);
Jones v. Alexander, 609 F.2d 778 (5th Cir. 1980); Billiteri v. U.S. Board of
Parole, 541 F.2d 938 (2nd Cir. 1976).

The requirement of a clear duty to act has been interpreted to mean that
the duty of the federal officer sued must be "ministerial, plainly defined and
peremptory."  Jeno's Inc. v. Commissioner of Patents and Trademarks, 498
F.Supp. 472, 476 (D.Minn. 1980).  The act sought to be compelled must be "a
clear nondiscretionary duty."  Pittston Coal Group v. Sebben, 488 U.S. 105, 121

(1988).  Accord, Nova Stylings, Inc. v. Ladd, 695 F.2d 1179 (9th Cir. 1983);

Welch v. Donovan, 551 F.Supp. 809 (D.D.C. 1982).  "It is well settled that a

writ of mandamus is not available to compel discretionary acts."  Cox v.

Secretary of Labor, 739 F.Supp. 28, 30 (D.D.C. 1990)(citations omitted).

In his Petition for Writ of Habeas Corpus and Writ of Mandamus

initiating this suit, Sadhvani asks the Court to issue writs of mandamus directing

respondents to adjudicate the I-730 Refugee/Asylee Relative Petition filed on his

behalf as well as his application for humanitarian parole into the United States.

Pl. Petition at 16, ¶¶ iv, v.  Both requests for relief are amenable to dismissal and

do not satisfy the test for mandamus.

Sadhvani's claims with regard to the I-730 petition are moot.  The

respondents have already adjudicated the petition and denied it.  Pl. Exh. 1.

Moreover, as set forth below, the decision whether to accord asylee status to the

spouse of an alien who has been granted asylum in the United States is

discretionary.  Thus, mandamus is not appropriate.

Section 208 of the INA provides in pertinent part that a spouse or child of

an alien who is granted asylum, if not otherwise eligible himself, **may** be granted

the same status as the primary asylee if accompanying, or following to join, such

alien.  8 U.S.C. § 1158(b)(3)(A).  Pursuant to 8 C.F.R. § 208.21(c), when a

spouse of an alien granted asylum is in the United States, but was not included in

the asylee's application, the asylee (here Alawi) may request benefits for her spouse by filing a separate form I-730, Refugee/Asylee Relative Petition. The right to apply for derivative asylee status for her spouse belonged to Alawi and the statute clearly provides that the respondents **may** grant the petition, the language of discretion.

In June of 1999, Alawi, who had been granted asylum on February 24, 1999, filed the required form I-730 requesting derivative asylee status for Sadhvani. On November 2, 2005, the USCIS advised Alawi that the petition was denied because of her stated intention to divorce Sadhvani. There is no evidence in the record that Alawi sought to resurrect her petition or that any other I-730 petition to classify Sadhvani as a relative asylee. Accordingly, this claim is unlikely to succeed, both because a writ of mandamus is inappropriate where the exercise of discretion is required and because the denial of the I-730 petition renders the claim moot in any event.

> D. Sadhvani's Return To Togo Was Pursuant
> To A Valid Order Of Removal Unaffected By
> The Board's Subsequent Action And Was Not
> Unlawful

Even assuming subject matter jurisdiction over Sadhvani's petition for habeas corpus or for a writ of mandamus, he can not succeed on the merits of his challenge to his removal. He contends that his removal was unlawful. The undisputed facts demonstrate that Sadhvani was removed to Togo under a valid

order of removal, and that no stay was still in effect. Moreover, there is no legal basis for this Court to require DHS to bring Sadhvani back to attend a hearing before the immigration judge.

As outlined above, Sadhvani was ordered removed by an IJ on September 1, 1998. The BIA affirmed the judge's decision on December 16, 2002. Petitioner did not seek further judicial review in the Court of Appeals and the order of removal became final. The BIA subsequently denied Sadhvani's first motion to reopen and his motion for reconsideration. Based on the I-730 relative petition to accord Sadhvani derivative asylum predicated on his marriage, he obtained a stay from the Baltimore Field Office of ICE in May 2005. Sadhvani contends that this stay was never terminated but that argument is disingenuous. As he must concede, the May 2005 stay was granted as a matter of discretion and was contingent on a grant of the I-730 petition and the motion to reopen. In November 2005, the I-730 petition was denied. In December 2005, the Board denied Sadhvani's request for a stay, after reviewing all of the information regarding his case and concluding that it was unlikely that his motion would be granted. At that point, there was no impediment to his removal.

Section 101(g) of the Immigration and Nationality Act, 8 U.S.C. § 1101(g), provides that an alien ordered removed who has left the United States is considered to have been deported in pursuance of law. In accordance with this

statute, it has long been held that an alien's departure from the United States pursuant to (or while under) an order of deportation or removal has the effect of executing the order, thereby bringing the proceedings to finality and depriving the Board and immigration judges of jurisdiction to entertain motions with respect to the underlying order.  Matter of Okoh, 20 I&N Dec. 864, 864-65 (BIA 1994); Matter of Estrada, 17 I&N Dec. 187, 188 (BIA 1979); Matter of Palma, 14 I&N Dec. 486 (BIA 1973); Matter of G-y B-, 6 I&N Dec. 159, 159-60 (BIA 1954); accord, Matter of Wang, 17 I&N Dec. 565 (BIA 1980); see also Dinnall v. Gonzales, 421 F.3d 247, 260 (3rd Cir. 2005).

This principle is also reflected in the regulations governing the adjudication of motions in immigration court, which provides in relevant part that "[a] motion to reopen or reconsider shall not be made by or on behalf of a person who is the subject of . . . removal proceedings subsequent to his or her departure from the United States."  8 C.F.R. § 1003.2(d).  Any such departure, "including the . . . removal of a person who is the subject of . . . removal proeceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion."  Id.; see also 8 C.F.R. § 1003.23(b)(1) (the equivalent regulation governing motions filed before the immigration court).  When the Board is presented with evidence that it has granted a motion to reopen after the alien's departure, it has reconsidered and

vacated the prior order on jurisdictional grounds. <u>Matter of Crammond</u>, 23 I&N

Dec. 179 (BIA 2001). Accordingly, the departure of an alien from the United

States pursuant to a lawful order of removal has the effect of depriving the

immigration judge and the BIA of jurisdiction over the prior proceedings, and

thus, precludes the Board from reopening those proceedings on petitioner's

motion. <u>See</u> <u>generally</u> <u>Navarro-Miranda v. Ashcroft</u>, 330 F.3d 672, 676 (5th Cir.

2003).

Moreover, petitioner's removal here can not be fairly characterized as

"unlawful" simply because subsequent developments would have given him the

opportunity to appear for a reopened hearing had he not been removed. <u>Cf.</u>

<u>Arreola-Arreola v. Ashcroft</u>, 383 F.3d 956, 958 (9th Cir. 2004) (holding that for

purposes of reinstatement under section 241(a)(5) of the Act, a removal order

that was lawfully executed is not invalidated by subsequent changes in law). In

summary, it is likely that the BIA will correct its error and bring its ruling into

accord with its governing regulations. Under these circumstances, petitioner

fails to support his request that this Court grant the extraordinary preliminary

relief he seeks and order his return to the United States.

## II. Sadhvani Has Not Demonstrated Irreparable Injury

To support a grant of a preliminary injunction, petitioner must also

demonstrate that he will suffer irreparable injury in the absence of the requested

injunctive relief. Petitioner's argument in support of this second element is short. He asserts that unless he is returned to the United States, his asylum claim will be lost. This argument should be rejected for several reasons.

First, petitioner has not been granted asylum in the United States. Rather, his original asylum application was denied by an immigration judge after a full hearing. That decision was affirmed by the BIA and petitioner did not seek further review in the appropriate court of appeals. The order is final. Seen in its best light, all that petitioner can claim is that the BIA granted his motion to reopen to present evidence that changed circumstances in Togo would warrant a new opportunity to present an asylum claim. While petitioner argues that he has demonstrated a *prima facie* asylum claim, the BIA did not make such a finding. Pl. Exh. 20. Rather, the decision stated only that petitioner had met the regulatory requirements of 8 C.F.R. § 1003.2(c)(3)(ii), which excuses an untimely motion to reopen based on a showing of changed circumstances in the country to which deportation has been ordered. Pl. Exh. 20, see 8 C.F.R. § 1003.2(c)(3)(ii). The regulation requires that the evidence of changed country conditions be material but does not require that the Board find that the alien has a *prima facie* claim for asylum.

Regardless, petitioner will not lose his ability to apply for asylum if he is not returned before this case is resolved. The September 11, 2006 master

-22-

calendar hearing is akin to a scheduling conference and the merits of petitioner's asylum claim would not be heard on that date even if he was in attendance.  See DHR Exh. 3.[6]

Thus, even if petitioner ultimately prevailed in this case, there is nothing that would preclude him from appearing before an immigration judge at a merits hearing and providing his testimony.  In the motion for preliminary injunction, it is stated that petitioner has "stealthily" moved in and out of Togo.  There is no indication in this record that petitioner could not leave Togo again and seek safety until this case is decided.  Sadhvani is living freely outside of the United States – in other words, respondents have no interest or control over where petitioner chooses to live, with the exception of unauthorized entry into the United States.

## III.  Burden To The Interests Of Others

Concededly, granting a preliminary injunction will have little impact on the interests of third parties.  Nevertheless, the absence of some overriding harm to third parties does not support the grant of a mandatory preliminary injunction in light of petitioner's failure to establish a substantial likelihood of success on the merits or irreparable harm.

---

[6]  Nevertheless, the Department of Homeland Security has filed a motion to continue the master calendar hearing for Sadhavani for 60 days or until the Board has ruled on DHS's motion to reconsider the Board's March 21, 2006 order purporting to reopen petitioner's proceedings.  Accordingly, the immigration judge is aware of the circumstances in this case.

## IV.  The Public Interest Does Not Favor The Requested Relief

Petitioner argues that by returning him to Togo, respondents have acted against the public interest by violating international laws against non-refoulement and constitutional due process.  Petitioner, however, has never been granted asylum.  Indeed, his original application for asylum and withholding of removal were denied by the immigration judge and the BIA.  That unreviewable final order finds that petitioner is not eligible for asylum.  Consequently, his return to Togo does not violate any treaties or conventions in international law.  Petitioner was accorded a full hearing on the merits of his asylum claim, an administrative appeal, and the opportunity for judicial review in the Fourth Circuit Court of Appeals.  The BIA denied his stay prior to his removal.  There was no unlawful action in the execution of that final order.

On the other hand, it is in the public interest to enforce the immigration laws as respondents have done in this case.  Petitioner does not seek to maintain the status quo while the Court considers his case.  Rather, he seeks an extraordinary order requiring his entry into the United States ahead of others who have legally applied for admittance, essentially gaining the ultimate relief he seeks in his case and obtaining entry while others wait their turn.  At some point, finality must attach to removal proceedings and aliens who are not entitled to remain in the United States must be required to leave.  It has been almost 10

years since petitioner was originally ordered removed from the United States.   It

would undermine the legitimate efforts of the legislative and executive branches

of government to regulate and control lawful immigration if respondents were

required to allow petitioner entry into the United States, particularly where

petitioner has such a slim likelihood of ultimately prevailing on his claims.

## CONCLUSION

For the reasons set forth above, this Court should deny petitioner's motion

for a preliminary injunction.

Respectfully submitted,


/s/
KENNETH L. WAINSTEIN
D.C. BAR # 451058
United States Attorney


/s/
RUDOLPH CONTRERAS
D.C. BAR # 434122
Assistant United States Attorney


/s/
MADELYN E. JOHNSON
DC Bar #292318
Assistant United States Attorney
U.S. Attorney's Office, Rm  E4114
555 4th Street, N.W.
Washington, D.C.  20530
*(202) 514-7135*