UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FABRICE SADHVANI                )
A 75-342-382                    )
                                )
            Petitioner,          )
                                )         C.A. No. 06-1454 (JDS)
      v.                         )
                                )
MICHAEL CHERTOFF, et. al.,       )
                                )
            Respondents.         )

RESPONSE TO RESPONDENTS' OPPOSITION
MOTION FOR PRELIMINARY INJUNCTION

        Petitioner, Mr. Sadhvani, through undersigned counsel, files this response to

Respondents' opposition to Mr. Sadhvani's request for a preliminary injunction. This court has

the ability to rectify the unlawful deportation of Mr. Sadhvani with the grant of a preliminary

injunction permitting him to return to the United States so that he may present his claim for

asylum before an Immigration Judge.

        On March 21, 2006, the Board of Immigration Appeals ("Board") granted Mr. Sadhvani's

motion to reopen his asylum case before an Immigration Judge. Prior to this order, the

Department of Homeland Security (DHS) had unlawfully deported Mr. Sadhvani to Togo, the

very country from which he fled persecution. This Court has jurisdiction over this preliminary

injunction action and Mr. Sadhvani is eligible for this relief.


                            ARGUMENT

I.      The Standard For Preliminary Injunctive Relief

To establish that he is eligible for preliminary injunctive relief, Mr. Sadhvani must show that he is 1) likely to succeed on the merits, 2) the failure to grant relief will cause him to suffer irreparable injury, 3) other interested parties will not be harmed if the relief is granted, and 4) granting the relief will further the public interest. *See Chaux. DOS*, 891 F.Supp. 650, 654 (D.D.C. 1995) ("Plaintiffs are not required to prevail on each of these factors; rather the factors should be viewed as a continuum -- more of one factor compensating for less of another.") (citing *Brown v. Artery Organization, Inc.*, 654 F. Supp. 1106, 1114 (D.D.C. 1987)).

II.     Mr. Sadhvani is Likely to Succeed on the Merits of his Claim

The Respondents state plainly that this Court "lacks jurisdiction over Sadhvani's claims whether brought as a habeas petition, under the mandamus statute, or on any other basis" and that the Court "lacks subject matter jurisdiction." (Op. to Mot. at 2). In determining issues of jurisdiction, Courts have also found a distinction between the district court's jurisdiction over challenges to discretionary removal decisions and claims that raise purely legal questions. *See Zadvydas v. Davis*, 533 U.S. 678 (2001) (finding that the petitioner did not request a review of the Attorney General's exercise of discretion, but the authority of the Attorney General to detain him under 8 U.S.C. § 1231(a)(6)); *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998) (holding that § 1252(g) does not prevent the district court from exercising jurisdiction over the plaintiffs' due process claims because the claims "do not arise from a decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien, but "constitute general collateral challenges to unconstitutional practices and policies by the agency.") (citations omitted). Mr. Sadhvani similarly presents a legal question. He asks this court to determine whether Respondents were authorized to deport him without challenging Respondents discretionary authority to deport him.

2

In addition to jurisdiction over matters of law, district courts have extensive discretionary power to grant equitable relief. *See Chou v. DOS*, 891 F.Supp. at 654 ("injunctive relief may be granted with either a high likelihood of success and some injury, or vice versa") (citations omitted). This court has an opportunity to remedy a violation of Mr. Sadhvani's due process rights, a constitutional violation particularly amenable to injunctive relief. As a deportable alien, Mr. Sadhvani was entitled to full due process protection. *Zadvydas v. Davis*, 533 U.S. 678, 692–93 (2001). Applying the test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the due process afforded Mr. Sadhvani was constitutionally insufficient.

Relying on balancing test established in *Mathews v. Eldridge*, it is appropriate to examine 1) the interest at stake for the individual; 2) the risk of an erroneous deprivation of the interest through the procedures used and the probable value of additional procedural safeguards; and 3) the government's interest in avoiding potential burdens the additional procedure would require. 424 U.S. 319 at 335. Here, the interest at stake for Mr. Sadhvani is an unquestionably important one: the opportunity to present his asylum claim to an Immigration Judge. The procedures in place have resulted in an erroneous deprivation of that right. A system that declares a person deportable, deports them to the country from which they seek asylum, and *then* declares the asylum case fit for a hearing before a judge, is an unjust system. The burden upon the government if it did not deport individuals contrary to the language of its own stay orders and contrary to the intent of the governing body reviewing the individual's case, would be far less than the cost of deportation and ensuing litigation.

Respondents violated Mr. Sadhvani's due process rights which resulted in his improper deportation, his inability to present his asylum case, and a bar from the United States for a period

3

of 10 years. This court has the power to grant injunctive relief and a strong interest in protecting Mr. Sadhvani's due process rights during his scheduled hearing before a Immigration Judge.

Respondents do not dispute that Mr. Sadhvani was granted a motion to reopen his asylum case before an Immigration Court, nor the reasoning of the order, which indicated country conditions in Togo warranted the reopening. Respondents simply insist that Mr. Sadhvani was "returned to Togo pursuant to a lawful final order of removal," and therefore cannot succeed on the merits of the case (Op. to Mot. at 8). However, the final court order in Mr. Sadhvani's case came in the form of a grant of a motion to reopen issued by the Board on March 21, 2006. In its order, the Board made a determination on the evidence presented by Mr. Sadhvani in support of his motion to reopen his asylum case and found that he unequivocally met the criteria for reopening the case. Ruling on his motion, the Board found:

> The motion falls under the regulatory exception for reopening out of time and in excess of the numerical limitation on such motions in order to apply for asylum and withholding of removal based on changed circumstances arising in the country of nationality...[respondent] has provided three letters from asylees living in the United States regarding current country conditions in Togo as well as a 2005 Amnesty International report on Togo...*the motion meets the standards for reopening based on new evidence of changed circumstances.* (Pl. Exh. 20).

Respondents argue that the Board, while granting Mr. Sadhvani's motion, "made no findings with regard to the merits of asylum or withholding of removal." (Op. to Mot. at 6). In fact, the Board made a very significant finding related to Mr. Sadhvani's asylum claim: that an Immigration Court should commit the time and resources to reopening Mr. Sadhvani's case based on persuasive evidence that conditions in his country have changed, a fundamental element of a successful asylum case.[1] In fact, given the change of country conditions in Togo

---

[1] The government notes that the matter was slated for a master calendar hearing and not an individual hearing. (Op. to Mot. at 6). This fact has no bearing on the case as this is the normal procedure after the Board grants a reopening an asylum case and proceeding before an Immigration Judge.

4

and the Board's decision to reopen the case, it is likely that Mr. Sadhvani will succeed in attaining asylum relief.

Mr. Sadhvani complied with all relevant immigration laws related to his asylum case. After submitting his motion to reopen, he requested a stay of deportation from the director of Immigration and Customs Enforcement (ICE) in an effort to protect himself from deportation while the Board made a finding on his motion. ICE granted the stay, and then, without ever terminating the stay, made the decision to deport Mr. Sadhvani. This arbitrary decision to remove Mr. Sadhvani from the United States directly contradicted the Board's desire to reopen his asylum case.

Government regulations provide that the filing of a motion to reopen shall not stay the execution of any decision made in a case *unless a stay of execution is specifically granted by the Board, the Immigration Judge, or an authorized officer of the Service.* CFR § 1003.2(f). On May 13, 2005, Calvin McCormick, Field Officer Director for U.S. Immigrations and Customs Enforcement (ICE) granted Mr. Sadhvani's request for a stay of deportation. The ICE director has authority to grant a stay under 8 C.F.R. § 241.6, which provides that the director may grant the stay for "such time or under such conditions as the director may deem appropriate." Because Mr. McCormick was an authorized officer of the Service, he met the requirements of CFR § 1003.2(f). The subsequent deportation of Mr. Sadhvani conflicted with the government's own regulations which specifically prevent action upon a case pending resolution of a motion to reopen when a stay of deportation is properly filed.

Mr. Sadhvani's stay of deportation was contingent on the grant of his wife's Refugee/Asylee Relative Petition (I-730) and the grant of his motion to reopen by the Board. Mr. Sadhvani never received notice of the denial of his petition and his motion to reopen, the

5

second condition mentioned in the ICE grant of Mr. Sadhvani's stay, was eventually granted by the Board.[2] However, before the Board's ruling, a condition specifically mentioned in the stay order, and without any notification to the Board, Respondents deported Mr. Sadhvani.

This deportation violated the terms of its own stay and failed to apprise the Board of its actions, the very adjudicating body which eventually granted Mr. Sadhvani's motion. The final order in Mr. Sadhvani's case was not the deportation order, as Respondents argue, but the order granting the reopening of Mr. Sadhvani's case. The Fifth Circuit recently held that despite a subsequent order of deportation, a court may retain jurisdiction over a habeas claim that was properly filed when the person was in custody. *Zalawadia v. Ashcroft*, 371 F.3d 292 (5th Cir. 2004). Similar to the petitioner in *Zalawadia*, Mr. Sadhvani properly filed his motion to reopen with the Board of Immigration Appeals before he was deported. In both cases, the relief that both petitioners sought was before an adjudicating body for determination before their deportation. To the extent that Mr. Sadhvani asks this Court to review the deportation order, it is only to determine if Respondents lawfully deported Mr. Sadhvani, an asylum seeker, without notice to the Board and without complying with the terms of its stay.

If injunctive relief is not available, this Court should issue a writ of mandamus to require government compliance with the law. In order to establish that Mr. Sadhvani is entitled to mandamus relief, he must establish that he has 1) a clear right to the relief sought; 2) a plainly defined and nondiscretionary duty on the part of the defendant; and 3) that no other remedy is adequate. *Ganem v. Heckler*, 746 F.2d 844, 852 (D.C. Cir. 1984). Here, Mr. Sadhvani has a clear right to a hearing on the merits of his asylum claim. The Board granted him this right to a

---

[2] Petitioner is now in receipt of the November 2005 denial notice. (Op to Mot. Exit. 1). As explained in Petitioner's motion, numerous attempts were made by former attorneys to determine the status of Mr. Sadhvani's I-730 petition which was initially filed in June of 1999 and apparently denied in November of 2005 – six years later. The only reasoning provided in the denial was a phone conversation conducted with Petitioner's wife which indicated an intent to file for divorce. At the present time, Petitioner and his wife are still married.

6

hearing in its March 2006 order, and Mr. Sadhvani's right to mandamus action stems from this due process right. In addition, the Respondents have a plainly defined and nondiscretionary duty to provide Mr. Sadhvani with a hearing, a duty which the Board outlines in its grant of Mr. Sadhvani's motion to reopen. Petitioner has no remaining administrative remedies available to him and accordingly, a writ of mandamus should be issued.

### III.    If A Preliminary Injunction is not Granted, Mr. Sadhvani will Suffer Irreparable Injury

The injury to Mr. Sadhvani if the preliminary injunction motion is not issued is manifold and irreparable. He is in jeopardy of losing his claim to asylum, a claim that the Board believes should be heard before an Immigration Judge. Respondents argue that the fact that Mr. Sadhvani was never granted asylum and was initially denied asylum by an Immigration Judge is determinative. (Op to Mot. at 22). Respondents' argument is disingenuous. Simply because Mr. Sadhvani never received asylum relief does not mean that he cannot lose his asylum claim. In order for Mr. Sadhvani to be granted asylum, he must be in the United States to present his case to an Immigration Judge. INA § 208(a), 8 U.S.C. § 1158(a) (defining an asylee as a person physically present in the U.S. at the time he is seeking refuge in this country).

An asylee seeker's inability to appear before a judge would result in a lost asylum claim. Simply because Mr. Sadhvani was never granted asylum does not mean that the Court's failure to grant injunctive relief will not result in irreparable harm if Mr. Sadhvani is not able to present his claim before the Board.[3] The meaning of Respondents' statement that "there is nothing that would preclude [Mr. Sadhvani] from appearing before an immigration judge at a merits hearing

---

[3] Petitioner is in receipt of the Department of Homeland Security's motion to continue the master calendar hearing for 60 days or until the Board has ruled on DHS's motion to reconsider the Board's order granting Respondent's motion to reopen.

and providing his testimony," is unclear. Mr. Sadhvani is precluded from reentering the United States at the present time without an order permitting him to reenter.

Respondents also state that a master calendar hearing is "akin to a scheduling conference," intimating that it is not important for Mr. Sadhvani to attend a master calendar hearing at which he would present his claims for relief. (Op. to Mot. at 23) Once again, this request for injunctive relief is intended to protect Mr. Sadhvani's due process rights, which include meeting and conferring with his attorney in preparation for every appearance before an immigration judge, both master calendar and merits hearings.

Importantly, Mr. Sadhvani would be barred from entering the United States for ten years if a preliminary injunction permitting him to reenter and present his asylum claim is not granted. The gravity of this bar cannot be underestimated when Mr. Sadhvani's wife resides in the United States and according to the findings of the Board, the country conditions in Togo warrant hearings for asylum seekers from that particular country. Having survived deadly attacks as a student member of Student Movement in Struggle for Democracy (MELD) in Togo as well as life threatening encounters with officials in his native country, (P. Mot. at 5), the result of his denial of a preliminary injunction may have very serious consequences.

**IV.    No Burden on the Interests of Others will Result if Mr. Sadhvani is Brought Back to Attend his Asylum Hearing**

Respondents concede that granting a preliminary injunction "will have little impact on the interests of third parties." (Op. to Mot. at 23). This factor should therefore be weighed in favor of Mr. Sadhvani in considering the availability of injunctive relief.

**V.    Public Interest Favors the Requested Relief**

Respondents give short shrift to the public's interest in providing asylees with an opportunity to seek protection from persecution in the United States. The protection against

8

refoulement is established in international law and is recognized in United States courts. *See Sale v. Haitian Centers Council, Inc.*, 509 US 155, 186-87 (1993) (finding that the right to non-refoulement is available to aliens physically present in a host country); *Marquez v. INS*, 105 F.3d 374, 376 (7th Cir. 1997) ("states must not forcibly send aliens to a country where their lives or freedom will be endangered, if that danger arises from a threat to a protected human right."). Because the principle of non-refoulement is a firmly established principle of international human rights law and is considered a form of international customary law, it is part of the United States federal common law. *The Paquete Habana* (international law/customary law is "part of our law and must be ascertained and administered by the courts of justice of appropriate jurisdiction."). 175 U.S. 677, 700 (1900).

Article 33 of the 1951 United Nations Convention Relating to the Status of Refugees (the "Convention") prescribes that a state party "shall [not] expel or return ('refouler') a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion."

The principle of non-refoulement is critical within the asylum context. The purpose of refugee law is to protect a person from his or her persecutor. When a person is sent back to his or her country of origin without a hearing on his or her asylum claim, their protections under international human rights law are violated. In Mr. Sadhvani's case, the Board ruled that country conditions in Togo created a situation where Mr. Sadhvani may be considered a refugee and in need of protection within the borders of the United States. Respondents have deprived Mr. Sadhvani of a hearing to establish this eligibility for relief.

9

Respondents argue that a preliminary injunction would undermine the government's efforts to regulate immigration. (Op. to Mot. at 25). Petitioner Sadhvani takes the position that any further breakdown in the adjudication of his asylum claim would indicate a greater problem of public interest: that there is no remedy when the government's efforts to regulate immigration result in the deportation of a person with a legitimate asylum claim.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction should be granted.

Respectfully submitted,

/s/

Paul Shearman Allen, J.D.
DC Bar No. 167940
**Paul Shearman Allen & Associates**
1329 18th St. NW
Washington, DC 20036
Ph. 202-638-2777
Fax. 202-638-1677

10