UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FABRICE SADHVANI,

    Petitioner,

    v.

MICHAEL CHERTOFF, SECRETARY
OF HOMELAND SECURITY, ET AL.,

    Respondents.

Civil Action No. 06-1454 (JDB)

**MEMORANDUM OPINION**

    Petitioner Fabrice Sadhvani ("petitioner" or "Sadhvani"), a native and citizen of Togo, entered the United States on a student visa in 1996, but remained well beyond the authorized period for his stay. After a series of proceedings before the immigration courts, Sadhvani was deported to Togo on December 28, 2005. Almost eight months later, he filed in this Court petitions for a writ of habeas corpus and a writ of mandamus, and also sought injunctive relief. At a hearing held on September 6, 2006, the Court denied petitioner's request for a preliminary injunction, emphasizing that he had little chance of success on the merits because of serious questions as to this Court's jurisdiction over the case. Respondents then filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Having considered the parties' submissions, the Court will grant respondents' motion and dismiss this case for lack of subject matter jurisdiction.

## **BACKGROUND**[1]

Petitioner entered the United States on May 26, 1996 as a nonimmigrant student authorized to remain in the country through March 30, 1997.  Pet.'s Exh. 7 (Notice to Appear)  He filed an application for asylum twelve days before his authorization lapsed.  Petition at 9, ¶ 34. After that application was denied, the Immigration and Naturalization Service, now a part of the Department of Homeland Security ("DHS"), served petitioner with a notice to appear that charged him with remaining in the United States without authorization.  Pet.'s Exh. 7.  A hearing was held before an immigration judge ("IJ"), during which petitioner conceded that he was removable under § 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), but sought relief in the forms of asylum, withholding of removal, and voluntary departure.  Pet.'s Exh. 2 (Hearing Transcript) at 2.  The IJ denied petitioner's requests for asylum and withholding of removal, but granted him sixty days within which to depart the United States voluntarily. Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA") on September 25, 1998.  Pet.'s Exh. 2  (Oral Decision of the IJ) at 8.

While his appeal was pending, petitioner married Miriam Mohamed Alawi, a Tanzanian national who had previously applied for asylum in the United States.  Petition at 11, ¶ 40.  Two days after the two were married, Alawi's asylum application was granted.  Resp.'s Motion Exh. 1 (11/2/2005 Letter to Alawi).  She then filed a form I-730 Refugee/Asylee Relative Petition, which would have derivatively converted petitioner into an asylee.  Petition at 11, ¶ 40; Pet.'s Exh. 10

---

[1] This factual and procedural background is drawn primarily from Sadhvani's Petition for a Writ of Habeas Corpus and Writ of Mandamus ("Petition") and the accompanying exhibits ("Pet.'s Exh."), as well as respondents' opposition to petitioner's motion for a preliminary injunction and the exhibits attached thereto ("Resp.'s Opp'n Exh.").

(Form I-730). But before the I-730 was processed, the BIA affirmed the earlier decision of the IJ and dismissed petitioner's appeal. Pet.'s Exh. 9 (BIA Decision). The BIA later denied his motion to reopen the removal proceedings because of his intervening marriage, as well as a subsequent motion for reconsideration. Pet.'s Exhs. 13 (Motion to Reopen), 16 (Motion to Reconsider). A few months after the latest administrative setback, petitioner and his wife separated. Pet.'s Exh. 19 (11/4/2005 Letter to Jeffrey Imperant). The INS still had not adjudicated petitioner's request for derivative relief by that time.

In March 2005, petitioner sought to reopen the removal proceedings on the additional ground that circumstances in Togo, the country to which he would be deported, had changed since the time of the 1998 hearing. See 8 C.F.R. § 1003.2(c)(3)(ii). He submitted three letters about the country conditions in Togo from asylees living in the United States, as well as a 2005 report prepared by Amnesty International. Petition at 12, ¶ 44; Pet.'s Exh. 20 (3/21/2006 BIA Order). While this motion was pending before the BIA, petitioner sought a stay of removal from both the Baltimore Field Office of DHS's Immigration and Customs Enforcement ("ICE") unit and the BIA. The stay request was based on his marriage to Alawi and the still pending I-730 application for derivative asylee status. See Pet.'s Exh. 17 (5/18/2005 ICE Letter). On May 18, 2005, ICE - - not the BIA - - granted the request "as a matter of discretion," but noted that the stay was "contingent on [petitioner's] I-730 and Motion to Reopen being granted by the [BIA]." Id.

The next key event occurred in early October 2005, when Alawi was contacted by a representative of DHS. During a telephone conversation, Alawi informed the representative that she and petitioner had separated and that she intended to file for divorce. Resp.'s Motion Exh. 1. Petitioner was detained by ICE agents on October 12, 2005. Petition at 13, ¶ 74; Pet.'s Exh. 19.

Approximately three weeks later, DHS sent Alawi a letter formally denying the I-730 application that she had filed on behalf of petitioner.  Resp.'s Motion Exh. 1.  The letter explained that, because she and petitioner were in the process of getting divorced, he was "no longer eligible for any benefits under Section 208 of the [INA]."  Id.  Two days after that letter was sent to Alawi, petitioner's counsel sent a letter to DHS, along with an affidavit from Alawi, emphasizing that Alawi had not yet filed for divorce and that the couple had married in good faith, and also seeking a copy of the correspondence denying petitioner's I-730 application.  Pet.'s Exh. 19.

On December 22, 2005, the BIA denied petitioner's request for a stay of removal.  Pet.'s Exh. 18.  The one-paragraph order stated that all information had been considered and that the request for a stay had been denied because there was "little likelihood" that petitioner's pending motion to reopen would be granted.  Id.  Six days later, on December 28, 2005, petitioner was sent back to Togo.  Petition at 13, ¶ 48.  The BIA, which had apparently never been informed of petitioner's removal, took up his motion to reopen the removal proceedings based on changed circumstances and granted that motion in March 2006.  In another brief order, the BIA announced that petitioner's motion met "the standards for reopening based on new evidence of changed circumstances" and remanded the matter to the IJ for further proceedings.  Although DHS filed a motion for reconsideration that brought petitioner's intervening removal to the attention of the BIA, a hearing before the IJ was scheduled for September 11, 2006.  Resp.'s Opp'n Exh. 2 (Master Calender Docket for 9/11/2006); Resp.'s Opp'n Exh. 3 (DHS Motion to Reconsider).

In the meantime, petitioner sought relief in this Court, simultaneously filing petitions for a writ of habeas corpus and a writ of mandamus, as well as a motion for a preliminary injunction.  Dkt. No. 1, 2.  The Court conducted a hearing on September 6, 2006, at the conclusion of which it

entered an order denying the motion for a preliminary injunction. Dkt. No. 9. Central to the Court's determination that petitioner had little likelihood of prevailing on the merits was the substantial doubt that this Court even had jurisdiction over the case. The Court thus invited respondents to file a motion to dismiss for lack of subject matter jurisdiction. See Order (9/6/2006). That motion is now ripe for resolution.

## DISCUSSION

In their motion to dismiss, respondents put forth a number of reasons, some of which overlap, why the Court lacks subject matter jurisdiction. Their two central arguments are that (1) because Sadhvani has been returned to Togo, he is no longer in respondents' "custody," a prerequisite to jurisdiction under the habeas corpus statute; and (2) § 106(a)(3) of the REAL ID Act, Pub. L. No. 109-13, div. B, § 106(a)(3), 119 Stat. 231, 310-11 (2005), divests district courts of jurisdiction over <u>all</u> claims arising from the execution of a removal order against an alien, whether relief is sought in the form of habeas or mandamus. These arguments will be addressed in turn.

### A. Standard of Review

Under Fed. R. Civ. P. 12(b)(1), the party seeking to invoke the jurisdiction of a federal court - - petitioner here - - bears the burden of establishing that the court has jurisdiction. See <u>US Ecology, Inc. v. U.S. Dep't of Interior</u>, 231 F.3d 20, 24 (D.C. Cir. 2000) (citing <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 103-04 (1998)); see also <u>Grand Lodge of Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"); <u>Pitney Bowes, Inc. v.</u>

U.S. Postal Serv., 27 F. Supp. 2d 15, 18 (D.D.C. 1998). Although a court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), "'plaintiff[s'] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1990)). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true. See Jerome Stevens Pharmaceuticals, Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987); Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986).

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) should not prevail "unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." Kowal v. MCI Commun. Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); Beverly Enters., Inc. v. Herman, 50 F. Supp. 2d 7, 11 (D.D.C. 1999). At the stage of litigation when dismissal is sought, a plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. See St. Francis Xavier Parochial Sch., 117 F.3d at 624.

**B. Custody**

"The turnkey of the habeas statute," 28 U.S.C. § 2241, "is the requirement of custody."

Abu Ali v. Ashcroft, 350 F. Supp. 2d 28, 45 (D.D.C. 2004). This requirement is jurisdictional in nature. Foster v. Booher, 296 F.3d 947, 949 (10th Cir. 2002); see also Mohammed v. Harvey, - - F. Supp. 2d - - , 2006 WL 2971926, at *4 (D.D.C. Oct. 19, 2006) ("A court has jurisdiction to issue the writ only if the petitioner is 'in custody under or by color of the authority of the United States' or 'in violation of the Constitution or laws or treaties of the United States . . . .'") (citation omitted). It is a requirement that the Supreme Court has construed "very liberally," see Maleng v. Cook, 490 U.S. 488, 492 (1989) (per curiam), since the habeas statute itself "does not attempt to mark the boundaries of 'custody' nor in any way other than by use of that word attempt to limit the situations in which the writ can be used." Jones v. Cunningham, 371 U.S. 236, 243 (1963). Heeding these words, courts have deemed a petitioner to be in custody even where he is not physically confined, see Maleng, 490 U.S. at 491, and have held that habeas petitioners can satisfy the custody requirement of § 2241 by demonstrating either that they were actually in the custody of the named respondent at the time of filing or that they are/were in the respondent's constructive custody - - for example, "in the actual, physical custody of some person or entity who cannot be deemed the United States, but is being held under the authority of the United States or on its behalf." Mohammed, - - F. Supp. 2d - - , 2006 WL 2971926, at *5.

Although the definition of custody may be flexible, that flexibility has its limits. See, e.g., Maleng, 490 U.S. at 491 (concluding that the court of appeals' ruling "streche[d] the language 'in custody' too far"). The controlling limit in this case is the consistent holding of federal courts that an alien who has already been removed from the United States and who files a habeas petition after his removal cannot satisfy the custody requirement. See Kumarasamy v. Att'y Gen. of U.S., 453 F.3d 169, 173 (3d Cir. 2006); Patel v. U.S. Att'y Gen., 334 F.3d 1259, 1263 (11th Cir. 2003);

Miranda v. Reno, 238 F.3d 1156, 1158 (9th Cir. 2001); see also Terrado v. Moyer, 820 F.2d 920, 921-22 (7th Cir. 1987) (per curiam) (holding that a previously deported alien was not "in custody" for purposes of another habeas corpus statute); El-Hadad v. United States, 377 F. Supp. 2d 42, 49 (D.D.C. 2005) (concluding that an alien living freely abroad could not "invoke habeas corpus jurisdiction because he is neither physically restrained nor detained at a point of entry into the United States").[2] The Third Circuit's recent decision in Kumarasamy, which petitioner cites in another context, is directly on point. There, a native of Sri Lanka and citizen of Canada challenged his deportation to Canada, arguing that there was no court order permitting ICE agents to remove him. 453 F.3d at 171. The district court concluded that an alien seeking reentry into the United States is not "in custody" for purposes of § 2241 and dismissed the habeas petition for lack of subject matter jurisdiction. Id. On appeal, the Third Circuit affirmed. Citing the Ninth Circuit's decision in Miranda and the Eleventh Circuit's decision in Patel, the court held explicitly that "petitioners who have already been removed from the country do not satisfy the 'in custody' requirement for habeas corpus jurisdiction." Id. at 753; see Patel, 334 F.3d at 1263; Miranda, 238 F.3d at 1158-59.

The same conclusion follows here. Petitioner readily acknowledges that he has been removed from the United States and that he is currently "moving in and out of Togo stealthily to avoid the Togolese authorities." Petition at 3, ¶ 5. There is likewise no dispute that his habeas

---

[2] The Fifth Circuit's decision in Zalawadia v. Ashcroft, 371 F.3d 292, 297 (5th Cir. 2004), is not to the contrary. There, the court, relying on the settled rule that custody is determined at the time the habeas petition is filed, reaffirmed its prior holdings that courts may exercise "habeas jurisdiction over a deported alien where that alien had been in custody at the time the suit was filed." Id. Here, in contrast, petitioner had already been removed to Togo and was consequently not "in custody" at the time that he filed his habeas petition in August 2006.

petition was filed in August 2006, almost eight months after his deportation.  Accordingly, he falls squarely within the category of aliens removed from the United States who file habeas petitions after their removal.  See Kumarasamy, 453 F.3d at 173.  The continued harms that Sadhvani alleges - - his fear for his life in Togo and the ten-year bar on future entry that the government has "presumably imposed" on him, see id. - - do not constitute "restraints not shared by the public generally that significantly confine and restrain his freedom."  Miranda, 238 F.3d at 1159.  Indeed, the Eleventh Circuit in Patel rejected the contention that deportation, which limits a non-citizen's prospects of lawfully reentering the country, amounts to a "severe restraint on [one's] individual liberty" sufficient to establish custody.  See 334 F.3d at 1263.  As in Miranda, therefore, petitioner "is subject to no greater restraint than any other non-citizen living outside American borders."  See 238 F.3d at 1159.

       Finally, petitioner is not saved by the one exception recognized in Miranda - - an exception whose validity has been questioned by another member of this Court.  See El-Hadad, 377 F. Supp. 2d at 49.  The Miranda court, bound as it was by Ninth Circuit precedent, acknowledged that it had previously held that "under extreme circumstances" district courts retain jurisdiction over habeas petitions filed by immigrants who have already been removed.  238 F.3d 1159 (citing Singh v. Waters, 87 F.3d 346, 349 (9th Cir. 1996)).  Those "extreme circumstances" were where "the INS removed an immigrant 'in violation of the [IJ's] order and after interference with his right to counsel[.]'"  Id. (quoting Singh, 87 F.3d at 349).  But even were this Court to accept the validity of the Singh exception, petitioner's case does not resemble the narrow circumstances identified by the Ninth Circuit.  Here, petitioner was represented by counsel - - if not always by able counsel, see Petition at 11, ¶ 41; Pet.'s Exh. 14 - - at all relevant times during the protracted removal

proceedings. Further, rather than acting contrary to the order of an IJ, respondents returned petitioner to Togo pursuant to the removal order that the IJ had entered in 1998. Petitioner's repeated argument that the BIA's grant of his motion to reopen in March 2006 served to void the existing removal order, Pet.'s Opp'n at 2, does not change the fact that when respondents acted in December 2005, they did so pursuant to an order that was still in effect. Hence, even if the custody requirement could be relaxed under "extreme circumstances," petitioner's case does not present such circumstances. His habeas petition is therefore properly dismissed for lack of subject matter jurisdiction.

## C. REAL ID Act

Respondents' second line of argument, which is based on § 106 of the REAL ID Act, applies equally to Sadhvani's requests for habeas and mandamus relief.[3] According to respondents, the REAL ID Act funnels review of the final decisions of the BIA to the regional courts of appeals and explicitly divests districts courts of jurisdiction to review not just final orders of removal themselves, but also ancillary claims arising from the Executive Branch's decisions to seek removal and to execute a removal order. Resp.'s Motion at 8-13; Reply at 3-4. These reforms, respondents submit, serve Congress's overall goal in enacting § 106: "to give every alien a fair opportunity to obtain judicial review while restoring order and common sense to the

---

[3] In his petition, Sadhvani also raised as bases for this Court's jurisdiction the general federal question statute (28 U.S.C. § 1331), the declaratory judgment statute (28 U.S.C. § 2201), and the Administrative Procedure Act (5 U.S.C. § 702). Part C of the Court's analysis, which focuses in part on the phrase "notwithstanding any other provision of law," 8 U.S.C. § 1252(g) (emphasis added), applies equally to these other statutory sections. Furthermore, petitioner has failed to invoke these provisions in his opposition to respondents' motion to dismiss. Accordingly, the Court may, and will, treat the motion as conceded in part. See Local Civ. R. 7(b); Fox v. Am. Airlines, Inc., 389 F.3d 1291, 1294 (D.C. Cir. 2004); Tnaib v. Document Technologies, LLC, - - F. Supp. 2d - - , 2006 WL 2699022, at *3 (D.D.C. Sept. 21, 2006).

judicial review process." H.R. Rep. No. 109-72, at 174 (2005) (Conf. Rep.).

Three provisions in § 106 of the REAL ID Act implement Congress's desire to "channel[] review to the courts of appeals." Id. First, in reaction to the Supreme Court's decision in INS v. St. Cyr, 533 U.S. 289 (2001), § 106(a) amended various subsections of 8 U.S.C. § 1252 to clarify the circumstances under which and the venue in which judicial review is available in immigration cases, and to make explicit that the phrase "notwithstanding any other provision of law" included all habeas statutes as well as the mandamus statute (28 U.S.C. § 1361) and the All Writs Act (28 U.S.C. § 1651). See 119 Stat. at 310-11; H.R. Rep. No. 109-72, at 175-76. The following subsection, § 106(b), made the changes prescribed in subsection (a) effective immediately and applicable "to cases in which the final administrative order of removal . . . was issued before, on, or after" the date that the REAL ID Act was enacted. In other words, § 106(b) made the amendments applicable retroactively. See Vargas-Sarmiento v. U.S. Dep't of Justice, 448 F.3d 159, 164 (2d Cir. 2006). Finally, § 106(c) requires the district courts to transfer to the appropriate regional court of appeals all habeas petitions "challenging a final administrative order of removal, deportation, or exclusion" that were pending on the date of the Act's enactment. The courts of appeals, in turn, were instructed to "treat the transferred case as if it ha[d] been filed . . . [as] a petition for review." Id.

The principal question here is whether these changes to 8 U.S.C. § 1252 - - and in particular amendments to 8 U.S.C. § 1252(g) - - divest the Court of subject matter jurisdiction in this case. This analysis necessarily begins with the statutory language. See Ardestani v. I.N.S., 502 U.S. 129, 135 (1991); District of Columbia Hosp. Ass'n. v. District of Columbia, 224 F.3d 776, 779 (D.C. Cir. 2000). The Supreme Court has "stated time and time again that courts must

presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) (citations omitted). And where "the words of a statute are unambiguous, . . . this first canon [of statutory construction] is also the last: 'judicial inquiry is complete.'" Id. at 254 (quoting Rubin v. United States, 449 U.S. 424, 430 (1981)); see also Teva Pharmaceutical Indus. Ltd. v. Crawford, 410 F.3d 51, 53 (D.C. Cir. 2005). If, as respondents maintain, the language of the statute unambiguously forecloses jurisdiction, "resort to 'the more controversial realm of legislative history' is unnecessary." See In re England, 375 F.3d 1169, 1178 (D.C. Cir. 2004) (Roberts, J.) (quoting Lamie v. United States Tr., 540 U.S. 526, 536 (2004)).[4]

Section 1252(g), entitled "Exclusive jurisdiction," now states:

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

There are three key components to this subsection. The first, "[e]xcept as provided in this

---

[4] Although the Court has cited the Conference Report in summarizing the Congressional goals underlying the REAL ID Act, portions of the same report, as if so often the case with legislative history, point in seemingly contradictory directions with respect to the reach of § 106(a). Compare H.R. Rep. No. 109-72, at 175 ("[S]ection 106 would not preclude habeas review over challenges to detention that are independent of challenges to removal orders. Instead, the bill would eliminate habeas review only over challenges to removal orders."), with id. at 176 ("Subsection 242(g) of the INA, concerning exclusive jurisdiction, is also amended to clarify that no habeas review or other non-direct judicial review would be available for any claim arising from a decision or action by the Attorney General regarding the initiation and adjudication of removal proceedings or the execution of removal orders against any alien."). Because the statutory language here is unambiguous, however, the Court need not wade any further into the murky waters of legislative history.

section," refers to the remainder of § 1252, which generally permits judicial review of removal orders only via a petition for a review in the regional court of appeals. See 8 U.S.C. §§ 1252(a)(1), (a)(5). The second key phrase is the one that begins with "notwithstanding any other provision of law." This phrase makes it clear that aliens ordered removed cannot circumvent the exclusive judicial review in the courts of appeals by seeking relief in the district court via a petition for habeas corpus, a request for mandamus relief, or by invoking the All Writs Act. See Sissoko v. Rocha, 440 F.3d 1145, 1155 n.14 (9th Cir. 2006) ("Section 106(a)(3) of the REAL ID Act added '(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title' after 'notwithstanding any other provision of law.'"). The final phrase in § 1252(g) divests all courts, unless indicated elsewhere in the statute, of jurisdiction over a certain class of claims - - those "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien . . . ."

      Respondents argue that the plain language of § 1252(g) encompasses petitioner's claims in this case. As they see it, petitioner is challenging "respondents' execution of the outstanding order for his removal to Togo." Resp.'s Motion at 9. More specifically, petitioner objects to respondents' decision to execute the removal order without notifying the BIA or the Department of Justice and while his motion to reopen the removal proceedings was still pending. See Petition at 13, ¶ 48. Petitioner alleges that these actions violated his rights under the Fifth and Fourteenth Amendments, as well as Article 45 of the Fourth Geneva Convention. Id. at 14, ¶ 53. Whatever legal label petitioner puts on them, however, these allegations are quite clearly "cause[s] or claim[s] by or on behalf of an[] alien arising from the decision or action by the Attorney General

-13-

to . . . execute removal orders against [that] alien." 8 U.S.C. § 1252(g). Accordingly, under clear statutory language, "no court" has jurisdiction over those claims "[e]xcept as otherwise provided" in § 1252. And as was explained above, the remainder of that section provides for exclusive judicial review in the appropriate regional court of appeals - - in this case, the U.S. Court of Appeals for the Fourth Circuit. <u>See id.</u> § 1252(b)(2). In short, Sadhvani's claims constitute challenges to the manner in which respondents executed a removal order and are thus subject to the unambiguous jurisdiction-stripping language of 8 U.S.C. § 1252(g).

Petitioner attempts to deflect attention from this insurmountable jurisdictional obstacle by arguing that "the relevant jurisdictional question for this Court is whether the removal order currently exists at all." Pet.'s Opp'n at 3 (citing <u>Kumarasamy</u>, 453 F.3d at 172). This argument, rather than rebutting respondents' position, confirms its strength. Concretely, petitioner's focus on the effect of a post-removal event - - the grant of his motion to reopen - - does no more than reaffirm the fact that what he is challenging is the lawfulness of his removal in the first place. Petitioner's claim is plainly one "arising from" the Attorney General's decision to execute a removal order and the manner in which that order was carried out. As such, § 1252(g) rives this Court of jurisdiction over the claim.

Petitioner's reliance on the Third Circuit's decision in <u>Kumarasamy</u> is misplaced. That case, as described above, affirmed a district court's dismissal of a habeas petition on the ground that an alien who files a habeas petition after being deported is not "in custody" for purposes of the habeas statutes. 453 F.3d at 173. Before reaching that ground, the court of appeals had to determine whether, under § 106(c) of the REAL ID Act, it was obliged to convert the petitioner's appeal of a district court order into a petition for review. The court concluded that it did not have

to do so, emphasizing that the petitioner was not challenging a final order of removal, but was instead arguing that his removal was unlawful because such an order had not been timely issued. Id. at 172. Under those "unusual circumstances," the court declined to treat the appeal as a petition for review and resolved the case on the alternative jurisdictional ground that the petitioner was not "in custody." Id. at 173.

Petitioner here reads Kumarasamy as standing for the proposition that "district courts maintain jurisdiction to determine whether an actual order of removal exists." Pet.'s Opp'n at 3. This is a strained reading of Kumarasamy, where the court of appeals analyzed the REAL ID Act's effect on its jurisdiction, not the jurisdiction of district courts. Indeed, the Third Circuit expressly declined to address the amendments to 8 U.S.C. § 1252(g) and the effect of those amendments on a habeas petition from an already deported alien challenging the circumstances surrounding his deportation. The court even amended its opinion to make explicit that it was not reaching "the question of whether §§ 1252(b)(9) and (g) apply in this case" because of its conclusion that the district court lacked jurisdiction on other grounds. Id. at 172-73 n.5; see 2006 U.S. App. LEXIS 19897 (3d Cir. Aug. 4, 2006) (Order Amending Opinion). And while it did not reach the issue directly, the court nonetheless went on to observe that, "if an alien challenges an action taken or a proceeding brought to remove him, it would appear that 8 U.S.C. §§ 1252(b)(9) and (g), as amended by the REAL ID Act, would preclude habeas review over that challenge." 453 F.3d at 172-73 n.5. This added language, though not controlling, fully supports this Court's reading of the REAL ID Act's amendments to § 1252(g). Accordingly, Kumarasamy does not alter in any way

the Court's conclusion that § 1252(g) deprives it of jurisdiction over Sadhvani's suit.[5]

If the Court had any lingering doubts about the soundness of this conclusion, those doubts would be dissolved by the longstanding rule in this circuit that "where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals." Telecomm. Research and Action Ctr. v. Fed. Commc'n Comm'n, 750 F.2d 70, 75 (D.C. Cir. 1984) ("TRAC"). The INA, as amended by the REAL ID Act, "commits review of agency action" in the immigration context exclusively to "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2); see also id. § 1252(a)(5) (establishing that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal"); id. § 1252(g) (adding the key section entitled "Exclusive jurisdiction"). Even had Congress not used the words "sole and exclusive" in the statute, the clear direction to funnel the review of agency decisions in the immigration context to the regional courts of appeals would still have sufficed to divest this Court of jurisdiction under TRAC. See 750 F.2d at 77 ("It is well settled that even where Congress has not expressly stated that statutory jurisdiction is 'exclusive,' . . . a statute which vests jurisdiction

---

[5] The footnote in Kumarasamy highlights another argument advanced by respondents: that the amendments to 8 U.S.C. § 1252(b)(9) enacted by § 106(a)(2) of the REAL ID Act likewise foreclose district court jurisdiction under the circumstances of the present case. Resp.'s Motion at 10-11. Some of the courts of appeals that have interpreted the amended § 1252(b)(9), however, have emphasized that it eliminates district court jurisdiction only over challenges to "final orders of removal." See Nadarajah v. Gonzales, 443 F.3d 1069, 1075 (9th Cir. 2006); Ishak v. Gonzales, 422 F.3d 22, 29 (1st Cir. 2005). Because petitioner's submissions here can be read as challenging the manner in which the removal order was executed, rather than the final order itself, the amended § 1252(b)(9) may not apply. But having already concluded that § 1252(g) deprives it of jurisdiction, the Court need not rely on § 1252(b)(9) or opine on the reach of that section.

in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute."). Because the INA "vests jurisdiction in a particular court," that statute, then, also "cuts off original jurisdiction" in all other courts - - including this one. See id. Moreover, were the Court to grant petitioner any of the relief that he seeks, such an order might well interfere with the future jurisdiction of the U.S. Court of Appeals for the Fourth Circuit over the ongoing proceedings regarding petitioner's motion to reopen. Petitioner's suit therefore qualifies as one "subject to the exclusive review of the Court of Appeals" under TRAC. Id. at 75. In short, the exclusive-review provisions of the INA and the possibility that the requested relief could interfere with the future jurisdiction of the Fourth Circuit bring this case squarely within the holding of TRAC.

Two final points about what the REAL ID Act does not do merit brief discussion. First, the legislative history makes clear that Congress did not intend to "preclude habeas review over challenges to detention that are independent of challenges to removal orders." H.R. Rep. No. 109-72, at 175 (emphasis added). Thus, challenges to prolonged detention of the sort addressed by the Supreme Court in Demore v. Kim, 538 U.S. 510 (2003), and Zadvydas v. Davis, 533 U.S. 678 (2001), are still cognizable in federal district courts. See Nadarajah v. Gonzales, 443 F.3d 1069, 1075 (9th Cir. 2006); Jean-Henriquez v. Dep't of Homeland Security, Civ.A. No. 05-0304, 2006 WL 1687853, at *2 (N.D. Fla. June 15, 2006) ("[T]he REAL ID Act does not preclude a district court from considering a challenge to continued detention under Zadvydas[.]") (collecting cases). This does not, however, help petitioner here, since his petition challenges not a prolonged detention prior to deportation, but his actual removal to Togo.

Second, it is worth mentioning once again that the Court's conclusion that the REAL ID

Act divests it of jurisdiction over this case does not necessarily deprive petitioner of a day in federal court.  If, as the government has asked it to do, the BIA reconsiders its previous decision granting petitioner's motion to reopen and denies the motion because of petitioner's removal, see Resp.'s Opp'n Exh. 3 (citing 8 C.F.R. § 1003.2(d) and Matter of Crammond, 23 I & N Dec. 179 (BIA 2001)), petitioner should be able to seek review of that adverse decision in the very forum that Congress intended - - the Court of Appeals for the Fourth Circuit.  See 8 U.S.C. § 1252(b)(2); H.R. Rep. No. 109-72, at 174; cf. Barry v. Gonzales, 445 F.3d 741, 744-45 (4th Cir. 2006) (reviewing the BIA's denial of a motion to reopen under the abuse-of-discretion standard).  The Court's decision today does no more than adhere to the explicit jurisdictional boundaries that Congress has established and redirect petitioner's challenges to the forum that Congress has chosen to hear them.

## CONCLUSION

For the foregoing reasons, respondents' motion to dismiss is granted, and this case is dismissed for lack of subject matter jurisdiction.  A separate order has been posted on this date.

                          /s/ John D. Bates
                          JOHN D. BATES
                        United States District Judge

Date:  November 6, 2006